**Robert MURPHY and Mary Murphy, Plaintiffs–Appellees,**

**v.**

**NEW MILFORD ZONING COMMISSION, George Doring, C. Brooks Temple, Charles Raymond, Lawrence Greenspan, Eleanor Florio, Patricia McRae, Mona Tito and Kathy Castagnetta, Defendants–Appellants,**

**United States of America, Intervenor–Defendant,**

Becket Fund for Religious Liberty,
Amicus Curiae.

Docket No. 03–9329.

United States Court of Appeals,
Second Circuit.

Argued Sept. 21, 2004.

Decided March 25, 2005.

Marci Hamilton, Washington Crossing, PA (Steven E. Byrne, Farmington, CT, of counsel), for Appellants.

Vincent P. McCarthy, American Center for Law and Justice Northeast, New Milford, CT (Kristina J. Wenberg, American Center for Law and Justice Northeast, New Milford, CT, of counsel), for Appellees.

Lowell V. Sturgill, Jr., Attorney, Appellate Staff, Civil Division, Department of Justice, Washington DC (Peter D. Keisler, Assistant Attorney General, Department of Justice, Washington DC, Kevin J. O'Connor, United States Attorney for the District of Connecticut, New Haven, CT, Mark Stern, Attorney, Appellate Staff, Civil Division, Department of Justice, Washington DC, of counsel), for Intervenor–Defendant.

Anthony R. Picarello, Jr., Roman P. Storzer, Derek L. Gaubatz, The Becket Fund for Religious Liberty, Washington DC, of counsel, for Amicus Curiae The Becket Fund for Religious Liberty.

Mitchell A. Karlan, Gibson, Dunn & Crutcher, New York City, of counsel, for Amici Curiae The Anti–Defamation League, The American Jewish Committee and The Jewish Council for Public Affairs.

Christopher Rizzo, Municipal Art Society of New York, New York City, of counsel, for Amici Curiae The Municipal Art Society of New York, Preservation League of New York State, American Planning Association–New York Metro Chapter, National Trust for Historic Preservation, New York Landmarks Conservancy, The Greenwich Village Society for Historic Preservation and Brooklyn Heights Association.

Before: FEINBERG, MESKILL and B.D. PARKER, Circuit Judges.

MESKILL, Circuit Judge.

This appeal arises from an action commenced in the United States District Court for the District of Connecticut, Fitzsimmons, *M.J.*, by Robert and Mary Murphy against the New Milford Zoning Commission, its individual members and the New Milford Zoning Enforcement Officer (collectively, "New Milford"). Following complaints of large, weekly gatherings at the Murphys' home and an investigation on the matter, New Milford informed the Murphys that under zoning regulations they were prohibited from hosting regularly scheduled meetings exceeding twenty-five non-family members. Immediately, the Murphys sued New Milford alleging various constitutional and statutory violations.

New Milford asks us to consider the propriety of July 2001 and August 2002 orders rejecting its argument that the Murphys' claims were not ripe for judicial review. In the event that we hold otherwise, New Milford has asked us to review a September 2003 decision permanently enjoining enforcement of a cease and desist order.

We agree with New Milford that the Murphys prematurely commenced this suit, such that their claims were never ripe for judicial intervention. We therefore vacate the permanent injunction and remand

with instructions to dismiss the complaint without prejudice.

## I.

The record before us reveals the following. The Murphys own a single-family home located on a cul-de-sac lined with six other single-family homes. The Murphys have been hosting Sunday afternoon prayer group meetings since 1994. They assert that their Christian beliefs require them to hold these meetings, which provide opportunity for worship and communal prayer not present at their church. The Murphys also claim that because of Robert Murphy's severe illness their home is the only acceptable location to host such meetings. The number of people who attend the meetings has varied, ranging from as few as ten to perhaps as many as sixty participants.

In August 2000, New Milford's zoning office and the New Milford Zoning Commission received complaints from the Murphys' neighbors regarding the prayer meetings. Neighbors complained of large numbers of cars traveling to and from the Murphys' home, of these cars parking in the street and causing access problems and of excessive noise when meeting attendees departed. In response, the Zoning Commission directed the Zoning Enforcement Officer (ZEO) to investigate. She visited the Murphys' property on three Sundays and found that from thirteen to twenty cars lined the Murphys' driveway, their rear yard and the cul-de-sac. The ZEO presented her findings to the Zoning Commission, which in turn issued an opinion concluding that the weekly, sizable

prayer meetings were not a customary accessory use in a single-family residential area. Based on this opinion, on November 29, 2000, the ZEO sent the Murphys an informal letter advising them that their meetings violated zoning regulations. Two days later the Murphys sued New Milford alleging numerous constitutional and statutory claims.

■ Thereafter, on December 19, 2000, the ZEO issued a formal cease and desist order charging the Murphys with violating New Milford's single-family zoning regulations. *See* New Milford Single Family District Regs. Ch. 25. The order requested that the Murphys no longer use their home "as a meeting place by a diverse group of people (25 to 40), who are not 'family' . . ., on a regularly scheduled basis." By its very terms, the cease and desist order did not apply to all meetings at the Murphys' residence, but only those that were regularly scheduled and included twenty-five or more non-family participants. Critical to our decision today, the Murphys did not appeal the cease and desist order to the Zoning Board of Appeals, where they could have sought a variance from the zoning regulations.[1] *See* Conn. Gen.Stat. §§ 8–6(a)(3), 8–6a, 8–7.

Instead, the Murphys proceeded with their suit in federal court. They amended their complaint to assert that the cease and desist order violated, among other things, their First Amendment rights to assemble peaceably and to exercise their religion freely, the Religious Land Use and Institutionalized Persons Act (RLUI-

---

1. "A variance is authority granted to [an] owner to use his property in a manner forbidden by the zoning regulations." *Reid v. Zoning Bd. of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271, 1275 (1996) (internal quotation marks omitted). To obtain such relief in Connecticut two conditions must be met: "(1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship." *Bloom v. Zoning Bd. of Appeals*, 233 Conn. 198, 207, 658 A.2d 559, 564 (1995) (internal quotation marks omitted).

PA), 42 U.S.C. § 2000cc,[2] and the Connecticut Act Concerning Religious Freedom (CACRF), Conn. Gen.Stat. § 52–571b—a state analogue to RLUIPA.[3]

The district court granted the Murphys a temporary restraining order and then a preliminary injunction enjoining enforcement of the cease and desist order.[4] Ruling on the preliminary injunction request, the district court held that the RLUIPA claim was ripe for judicial review. The court first reasoned that RLUIPA required only institutions such as a church, temple or synagogue, and not individuals such as the Murphys, to appeal a local land use decision to a zoning board of appeals or to apply for a variance before initiating a federal suit. *See Murphy v. Zoning Comm'n*, 148 F.Supp.2d 173, 184–85 (D.Conn.2001). The court next characterized the Murphys' claims as "primarily legal rather than factual" and concluded that "the parties have made a sufficient factual showing" to permit the court to decide the preliminary injunction motion. *Id.* at 186. Finally, the district court concluded that the Murphys suffered immediate and substantial hardship because the only means of complying with the cease and desist order was to terminate the prayer meetings. *See id.* at 186–87. In granting the preliminary injunction the district court held only that the RLUIPA claim was ripe; it explicitly reserved decision on the ripeness of the remaining First Amendment and state statutory claims. *See id.* at 183 n. 5, 186 n. 12.

New Milford then moved to dismiss the Murphys' complaint based in part on the argument that the remaining claims were not ripe. The district court disagreed; tracking the previous ruling on the RLUIPA claim, it allowed these claims to proceed. *See Murphy v. Zoning Comm'n*, 223 F.Supp.2d 377, 384–87 (D.Conn.2002). The court held that the Murphys were not required to appeal the cease and desist order to the New Milford Zoning Board of Appeals or to submit a variance application before litigating the claims because both steps would be merely remedial, "rather than part of the decision-making process." *Id.* at 385.

Ultimately, on September 30, 2003, the district court granted the Murphys a permanent injunction. It held that the cease and desist order violated RLUIPA, the CACRF and the Murphys' First Amendment rights to freely exercise their religion and to peaceably assemble. *See Murphy v. Zoning Comm'n*, 289 F.Supp.2d 87, 102–09, 114–15, 126 (D.Conn.2003). The district court also denied New Milford's affirmative defenses that: (1) both RLUIPA and the CACRF violated the Establishment Clause of the First Amendment and (2) Congress exceeded its powers un-

---

2. RLUIPA prohibits a governmental entity from applying a land use regulation "in a manner that imposes a substantial burden on the religious exercise of a person . . . unless the government demonstrates that imposition of the burden . . . is in furtherance of a compelling government interest; and . . . [the burden imposed] is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1).

3. The Murphys also initially asserted that the cease and desist order violated their First Amendment rights to free speech and to privacy, the Establishment Clause of the First

Amendment, the Takings Clause of the Fifth Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment and provisions of the Connecticut State Constitution. These claims, which either have been abandoned or dismissed in the district court, are not raised on appeal and do not concern us here.

4. Following the grant of the temporary restraining order, the parties consented to proceed before a magistrate judge with the right to appeal directly to this Court. *See* 28 U.S.C. § 636(c).

der the Commerce Clause and section five of the Fourteenth Amendment by enacting RLUIPA. *See id.* at 117–26.

New Milford appealed, asserting that the Murphys' claims were never ripe for federal judicial intervention and that, assuming otherwise, the district court improperly ruled on the merits.

## II.

■ As we are obliged to do, we first consider the ripeness issue. *See Vandor, Inc. v. Militello,* 301 F.3d 37, 38 (2d Cir. 2002) (per curiam). Ripeness is a jurisdictional inquiry. *See id.* As such, we must presume that we cannot entertain the Murphys' claims "unless the contrary appears affirmatively from the record." *Renne v. Geary,* 501 U.S. 312, 316, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991) (internal quotation marks omitted). And, to establish jurisdiction in this zoning dispute the Murphys have the "high burden" of proving that we can look to a final, definitive position from a local authority to assess precisely how they can use their property. *Hoehne v. County of San Benito,* 870 F.2d 529, 533 (9th Cir.1989); *see also Acierno v. Mitchell,* 6 F.3d 970, 975 (3d Cir.1993). Mindful of these benchmarks, we undertake *de novo* review of the district court's ripeness rulings. *See Santini v. Connecticut Hazardous Waste Mgmt. Serv.,* 342 F.3d 118, 124 (2d Cir.2003).

## III.

Ripeness is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority. *See Suitum v. Tahoe Reg'l Planning Agency,* 520 U.S. 725, 733 n. 7, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997); *see also Reg'l Rail Reorganization Act Cases,* 419 U.S. 102, 138, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). At its heart is whether we would benefit from deferring initial review until the claims we are called on to consider have arisen in a more concrete and final form. As the Supreme Court has explained, the ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Ripeness, therefore, is "peculiarly a question of timing" as cases may later become ready for adjudication even if deemed premature on initial presentation. *Reg'l Rail,* 419 U.S. at 140, 95 S.Ct. 335.

■ Determining whether a case is ripe generally requires us to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. 1507. This two-prong inquiry in some ways tracks both the doctrine's Article III and prudential underpinnings. The "fitness of the issues for judicial decision" prong recognizes the restraints Article III places on federal courts. It requires a weighing of the sensitivity of the issues presented and whether there exists a need for further factual development. *See, e.g., Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). Meanwhile, the "hardship to the parties" prong clearly injects prudential considerations into the mix, requiring us to gauge the risk and severity of injury to a party that will result if the exercise of jurisdiction is declined. *See Abbott Labs.,* 387 U.S. at 149, 87 S.Ct. 1507.

Building on the foregoing, the Supreme Court has developed specific ripeness requirements applicable to land use disputes. In *Williamson County Regional Planning*

*Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Court was asked to consider whether the application of zoning laws amounted to a Fifth Amendment taking. Although the merits were reached below, the Court held that it lacked jurisdiction to consider the claim for two independent reasons. *See Seguin v. City of Sterling Heights,* 968 F.2d 584, 587 (6th Cir.1992) (explaining that the *Williamson County* ripeness test consists of "two distinct" requirements); *Southern Pac. Transp. Co. v. Los Angeles,* 922 F.2d 498, 502 (9th Cir.1990) (stating that ripeness under *Williamson County* "involves two independent prerequisites").

First—paralleling the initial prong of *Abbott Laboratories*—the Court held that before commencing its takings suit the developer was required to obtain a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations. *See Williamson County,* 473 U.S. at 186, 105 S.Ct. 3108. Since labeled "prong-one ripeness," *see, e.g., DLX, Inc. v. Kentucky,* 381 F.3d 511, 518 (6th Cir.2004), this jurisdictional prerequisite conditions federal review on a property owner submitting at least one meaningful application for a variance. *See Williamson County,* 473 U.S. at 190, 105 S.Ct. 3108 ("[I]n the face of [the developer's] refusal to follow the procedures for requesting a variance" the developer had "not yet obtained a final decision regarding how it [would] be allowed to develop [the] property."); *see also MacDonald, Sommmer & Frates v. Yolo County,* 477 U.S. 340, 352 n. 8, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986) (holding takings claim unripe and stating that a "meaningful [variance] application has not yet been made"). Because the *Williamson County* developer failed to pursue available variance relief the Court concluded that it could not thoroughly consider the merits. *See Williamson County,* 473 U.S. at 191,

105 S.Ct. 3108 (holding that because of the developer's failure to obtain a final decision, the Court cannot evaluate how the regulations at issue would be applied to the particular land in question).

Four considerations, all of which motivate our decision today, undergird prong-one ripeness. First, as just explained, the *Williamson County* Court reasoned that requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record. *See id.* at 187, 105 S.Ct. 3108. Second, and relatedly, only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel. *See id.* at 190, 105 S.Ct. 3108. Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes. Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible. *See id.* at 187, 105 S.Ct. 3108; *see also Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 346, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, *J.,* concurring). Finally, since *Williamson County,* courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution. *See Taylor Inv., Ltd. v. Upper Darby Township,* 983 F.2d 1285, 1291 (3d Cir.1993) (holding claims in zoning dispute were not ripe and recognizing that local bodies "are better able than federal courts" to address such disputes) (internal quotation marks omitted); *Spence v. Zimmerman,* 873 F.2d 256, 262 (11th Cir.1989) ("We stress that federal courts do not sit as zoning boards

of review and should be most circumspect in determining that constitutional rights are violated in quarrels over zoning decisions."); *Hoehne,* 870 F.2d at 532 (acknowledging that *Williamson County* and its progeny "guard against the federal courts becoming the Grand Mufti of local zoning boards"); *Littlefield v. City of Afton,* 785 F.2d 596, 607 (8th Cir.1986) ("We are concerned that federal courts not sit as zoning boards of appeals."), *overruled on other grounds, Chesterfield Dev. Corp. v. City of Chesterfield,* 963 F.2d 1102, 1104 n. 2 (8th Cir.1992).

■■ Despite these strong policy considerations supporting prong-one ripeness, the finality requirement is not mechanically applied. A property owner, for example, will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile. That is, a property owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied. *See Southview Assocs., Ltd. v. Bongartz,* 980 F.2d 84, 98–99 (2d Cir.1992) (discussing futility exception); *see also Suitum,* 520 U.S. at 739, 117 S.Ct. 1659 (holding that land use board had no discretion over how landowner could use her property such that "no occasion exists for applying *Williamson County*'s [finality] requirement"); *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1012 n. 3, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (stating that an application for a variance is not required when it would be "pointless"). And, a property owner will not be required to litigate a dispute before a zoning board of appeals if it sits purely as a remedial body. *See Williamson County,* 473 U.S. at 193, 105 S.Ct. 3108 (holding that appeal to zoning board of appeals is not required when the board is "empow-

ered, at most, to review [a] rejection, not to participate in the ... decisionmaking").

In sum, absent a futility or remedial finding, prong-one ripeness reflects the judicial insistence that a federal court know precisely how a property owner may use his land before attempts are made to adjudicate the constitutionality of regulations purporting to limit such use.

Under the second prong of *Williamson County* a property owner must seek compensation for an alleged taking before proceeding to federal court. *See id.* at 194, 105 S.Ct. 3108. The "prong-two ripeness" test is germane to takings challenges as it "stems from the Fifth Amendment's proviso that only takings without 'just compensation' infringe that Amendment." *Suitum,* 520 U.S. at 734, 117 S.Ct. 1659. It follows that because we are not confronted with such a claim, this aspect of *Williamson County* is not implicated. *See, e.g., Southview Assocs.,* 980 F.2d at 97 (holding that developer's substantive due process claim premised on arbitrary and capricious government conduct was subject only to prong-one ripeness).

We recognize that the Supreme Court developed the *Williamson County* ripeness test in the context of a regulatory takings challenge. Nevertheless, it has not been so strictly confined. *See, e.g., Taylor Inv.,* 983 F.2d at 1292 (applying *Williamson County* finality rule to substantive due process, procedural due process and equal protection challenges to a zoning decision); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1507 (9th Cir.1990) (same); *Unity Ventures v. County of Lake,* 841 F.2d 770, 774–76 (7th Cir.1988) (same). *But see Nasierowski Bros. Inv. Co. v. City of Sterling Heights,* 949 F.2d 890, 894 (6th Cir.1991) (holding that procedural due process claim is cognizable in federal court

even absent final decision from zoning authorities).

Following the view of these other circuits, we have applied prong-one ripeness to land use disputes implicating more than just Fifth Amendment takings claims. For example, we previously applied the test to substantive due process claims stemming from a zoning decision. *See Southview Assocs.*, 980 F.2d at 97. And, we recently recognized that in certain circumstances a First Amendment claim emanating from a land use dispute may be subject to the *Williamson County* prong-one ripeness test.[5] *See Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir.2002); *see also Kittay v. Giuliani*, 112 F.Supp.2d 342, 348–49 & n. 5 (S.D.N.Y.2000) (Parker, *J.*).

The *Williamson County* ripeness test is a fact-sensitive inquiry that may, when circumstances warrant, be applicable to various types of land use challenges. *See DLX, Inc.*, 381 F.3d at 525 (noting that prong-one ripeness is a fact-dependent determination); *Hoehne*, 870 F.2d at 533 ("[T]o prove that a final decision was indeed reached, the facts of the case must be clear, complete, and unambiguous."). Against this backdrop, we now consider whether *Williamson County* finality applies to the Murphys' claims and if so, whether the claims are ripe under that test.

IV.

The Murphys assert violations of their First Amendment rights to assemble peaceably and to exercise their religion freely. In addition to these constitutional claims, the Murphys allege that the restrictions placed on their prayer meetings violated RLUIPA and its Connecticut state analogue, the CACRF. *See* 42 U.S.C. § 2000cc–2(b); Conn. Gen.Stat. § 52–571b. In enacting RLUIPA, Congress endeavored to codify existing Free Exercise jurisprudence.[6] *See Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1239 (11th Cir.2004); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760–61 (7th Cir.2003). Relatedly, we do not believe it necessary to distinguish the RLUIPA claim from the First Amendment Free Exercise claim when it comes to our ripeness inquiry. *Cf. Westchester Day School v. Vill. of Mamaroneck*, 386 F.3d 183, 191 (2d Cir.2004) (remanding RLUIPA claim when it was unclear from record evidence whether local zoning board would have approved a modified special use permit). The legislative history underlying RLUIPA supports this choice. *See* 146 Cong. Rec. S7774–01, S7776 (daily ed. July 27, 2000) (Joint Statement of Sen. Orrin Hatch and Sen. Edward Kennedy) (stating that RLUIPA was not intended to "relieve religious institutions from applying for variances, special permits or exceptions, where available without discrimination or unfair delay"). But, we remain mindful that *Williamson County* should be cautiously applied to these claims. *See Dougherty*, 282 F.3d at 90 (noting that for First Amendment

---

**5.** However, we elected not to apply the *Williamson County* ripeness test to the First Amendment claim then before us because: (1) we were already presented with an adequate factual record such that the property owner could do "nothing to further define his injury" and (2) based "[o]n the facts" the property owner had properly alleged "an immediate injury." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90

(2d Cir.2002) ("Therefore, Dougherty's First Amendment retaliation claim should not be subject to the application of the *Williamson* ripeness test."). As discussed below, the situation we confront is quite different.

**6.** Our decision today does not require us to determine whether Congress in fact succeeded in this endeavor.

claims, "the ripeness doctrine is somewhat relaxed"). We therefore undertake a preliminary inquiry to determine whether the Murphys must show that they have obtained a final, definitive decision from the entity charged with implementing the zoning regulations.

Following the guideposts outlined in *Dougherty* we ask: (1) whether the Murphys experienced an immediate injury as a result of New Milford's actions and (2) whether requiring the Murphys to pursue additional administrative remedies would further define their alleged injuries. *See id.* The answers to these questions lead us to conclude that the circumstances of this case compel application of *Williamson County* to each of the Murphys' claims. We discuss each inquiry in turn.

■ First, despite the Murphys' argument to the contrary, we hold that the cease and desist order did not inflict an immediate injury. To support their contention on this point the Murphys assert that New Milford could have enforced the cease and desist order through civil fines and imprisonment, as provided for in Connecticut General Statutes section 8–12. This statute, however, does not provide New Milford with any arresting or fining power. Rather, section 8–12 merely provides a procedure whereby New Milford would be required to bring an action in Connecticut Superior Court to enforce the order. *See Gelinas v. Town of West Hartford,* 225 Conn. 575, 593, 626 A.2d 259, 269 (1993). Under the statute the award of fines and imprisonment can occur only after a legal proceeding is filed (a step never taken here), zoning violations are proven and the trial court—in exercising *its* discretion—believes that penalties are necessary to deter future violations. *See Bauer v. Waste Mgmt. of Conn.,* 239 Conn. 515, 532, 686 A.2d 481, 489 (1996); *Town of Monroe v. Renz,* 46 Conn.App. 5, 14, 698

A.2d 328, 332 (App.Ct.1997). New Milford, then, plainly lacked the enforcement authority on which the claim of immediate hardship is premised.

Claims of immediate injury are further suspect given that an appeal of the cease and desist order to the New Milford Zoning Board of Appeals automatically would have stayed its enforcement. Section 8–7 of the Connecticut General Statutes provides that, "[a]n appeal from any ... order [as long as the order does not prohibit construction] ... shall stay all proceedings in the action appealed from." Conn. Gen. Stat. § 8–7. This provision further belies the contention that the Murphys' only recourse following the cease and desist order was to suspend their prayer meetings, rendering their injury immediate.

Second, we ask whether the Murphys' alleged injury is clearly defined on the existing record. Unlike *Dougherty,* the resolution of the constitutional and statutory claims we are asked to consider here hinge on factual circumstances not yet fully developed. *See MacDonald,* 477 U.S. at 359, 106 S.Ct. 2561 (White, *J.,* dissenting) (recognizing that land use challenges are "closely tied to the facts of a particular case and that there is often an ongoing process by which the relevant regulatory decisions are made"). For example, the record before us does not reveal whether the cease and desist order evinces discriminatory enforcement of the zoning regulations. That is, the record fails to show whether New Milford has declined to enforce the zoning regulations to limit attendance at regularly scheduled secular events or whether variances have been sought and granted for such gatherings. Also murky is precisely how and why New Milford arrived at twenty-five as the number of non-family guests permitted to attend the prayer meetings.

In addition to these lingering uncertainties, the parties have yet even to agree on the typically ministerial matter of informing us who the proper defendants are: New Milford asserts that only the ZEO's actions require review, whereas the Murphys claim that both the ZEO's and the Zoning Commission's activities are in play. More importantly, the parties continue to disagree as to what the challenged issue is: New Milford posits that it is the zoning regulations, while the Murphys claim it is the cease and desist order. An appeal to the Zoning Board of Appeals surely would have illuminated at least some, if not all, of these vexing issues. *See R & R Pool & Patio v. Zoning Bd. of Appeals*, 257 Conn. 456, 468, 778 A.2d 61, 69–70 (2001).

Under Connecticut law, a zoning board of appeals is required to hold a hearing "to find the facts and to apply the pertinent zoning regulations to those facts." *Caserta v. Zoning Bd. of Appeals*, 226 Conn. 80, 90, 626 A.2d 744, 748 (1993). The purpose of such a hearing is to " 'afford an opportunity to interested parties to make known their views and to enable the board to be guided by them.' " *Willimantic Car Wash v. Zoning Bd. of Appeals*, 247 Conn. 732, 740, 724 A.2d 1108, 1111 (1999) (quoting *Kleinsmith v. Planning & Zoning Comm'n*, 157 Conn. 303, 311, 254 A.2d 486, 490 (1968)). This appellate procedure therefore allows for "a record [to] be made." *Dietzel v. Planning Comm'n*, 60 Conn.App. 153, 162, 758 A.2d 906, 912 (App.Ct.2000). Thus, before the Zoning Board of Appeals the Murphys would have had the opportunity to challenge and develop a record on the standards (or lack thereof) underlying New Milford's determination that no more than twenty-five non-family members could attend the prayer meetings. In addition, the availability of alternative restrictions—such as limiting the number of vehicles, not the number of attendees—may have been explored. The exploration of these issues has particular bearing on a Free Exercise and RLUIPA individualized assessments analysis, in which we would seek to determine whether New Milford's actions serve a compelling government interest through the least restrictive means possible. *See generally Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531–32, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993); *Sherbert v. Verner*, 374 U.S. 398, 406–09, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Bypassing the Zoning Board of Appeals and its hearing processes, which were statutorily designed for exploration and development of these sorts of issues, leaves the Murphys' alleged injuries ill-defined.

Based on the foregoing we conclude that it is appropriate to apply *Williamson County* 's prong-one finality requirement to each of the Murphys' claims. Thus, the Murphys may not proceed in federal court until they have obtained a final, definitive position from local authorities as to how their property may be used. Because such a decision has not yet been rendered, we lack jurisdiction.

Had the Murphys appealed the cease and desist order to the Zoning Board of Appeals and requested variance relief from that body, *see* Conn. Gen.Stat. §§ 8–6, 8–6a, things may very well have been different. The Zoning Board of Appeals possessed the authority to review the cease and desist order *de novo* to determine whether the zoning regulations were properly applied. *See Munroe v. Zoning Bd. of Appeals*, 75 Conn.App. 796, 801, 818 A.2d 72, 76 (App.Ct.2003). In fact, a zoning board of appeals " 'is in the most advantageous position to interpret its own regulations and apply them to the situations before it.' " *Id.* (quoting *Doyen v. Zoning Bd. of Appeals*, 67 Conn.App. 597, 603, 789 A.2d 478, 483 (App.Ct.2002)). In the event that the Murphys were dissatis-

fied with the Zoning Board of Appeals' interpretation and application of the zoning regulations they still could have sought a variance from those regulations. *See* Conn. Gen.Stat. § 8–6a.

A variance is more than a mere remedial measure. *See Williamson County*, 473 U.S. at 193, 105 S.Ct. 3108. And, in Connecticut, a zoning board of appeals is generally the body that would consider whether to grant a variance. *See Port Clinton Assocs. v. Bd. of Selectmen*, 217 Conn. 588, 606–07, 587 A.2d 126, 136 (1991). For this reason, the Connecticut Supreme Court recognized in *Port Clinton* that a zoning board of appeals will typically be the venue from which a final, definitive decision will emanate. It thus stated: "[I]n many instances a final decision by the 'initial decisionmaker,' really means a decision by the zoning board of appeals, when that body ... is exercising its power to grant variances and exceptions." 217 Conn. at 607, 587 A.2d at 136. But, the Murphys failed to seek such relief, a failure that proves fatal to their present federal litigation.

As the *Williamson County* Court held, failure to pursue a variance prevents a federal challenge to a local land use decision from becoming ripe. *See Williamson County*, 473 U.S. at 190, 105 S.Ct. 3108. This is so because through the variance process local zoning authorities function as "flexible institutions; what they take with the one hand they may give back with the other." *MacDonald*, 477 U.S. at 350, 106 S.Ct. 2561. Not pursuing a variance thus leaves undetermined the permitted use of the property in question. *See Williamson County*, 473 U.S. at 193, 200, 105 S.Ct. 3108.

Here, as New Milford argues, the Murphys *may* have been able to obtain a variance from the Zoning Board of Appeals by

showing that a literal enforcement of the zoning requirements would work an unusual hardship. *See* Conn. Gen.Stat. § 8–6(a)(3); *Reid v. Zoning Bd. of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271, 1275 (1996); *Belknap v. Zoning Bd. of Appeals*, 155 Conn. 380, 383, 232 A.2d 922, 924 (1967). Nevertheless, they failed to submit a single variance application in this matter.[7] This failure, just as in *Williamson County*, deprives us of any certainty as to what use of the Murphys' property would be permitted. Hence, the Murphys' claims are not ripe. *See Suitum*, 520 U.S. at 739, 117 S.Ct. 1659 (noting that the *Williamson County* precedents "addressed the virtual impossibility of determining what [use] will be permitted on a particular lot of land when its use is subject to the decision of a regulatory body invested with great discretion, which it has not yet even been asked to exercise").

As our earlier inquiry demonstrates, this case does not represent a mechanical application of *Williamson County*. Rather, this case epitomizes the rationales that drive that test. We have been asked to address several weighty constitutional and statutory issues on what is an inadequate factual record. Enforcing the requirement that the Murphys first obtain a final, definitive decision from local zoning authorities ensures that federal review—should the occasion eventually arise—is premised on concrete and established facts. We also have been asked to adjudicate several constitutional disputes, such as whether New Milford's zoning decision violates the Murphys' First Amendment rights to assemble peaceably and to exercise their religion freely. In addition, were we to reach the merits of the statutory claims we might be required to consider whether RLUIPA

---

**7.** This fact forecloses any contention that requiring *Williamson County* finality would be futile. *See Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1455 (9th Cir.1987).

and the CACRF run afoul of the Establishment Clause and whether RLUIPA violates the separation of powers doctrine, section five of the Fourteenth Amendment and the Tenth Amendment. Enforcing the requirement that the Murphys pursue a variance prior to our review ensures that all non-constitutional avenues of resolution have been explored first, perhaps obviating the need for judicial entanglement in these constitutional disputes.

In fact, Connecticut's land use laws recognize the very importance of the variance and appeals process for both aggrieved property owners and reviewing courts. In language particularly pertinent to our decision today, the Connecticut Supreme Court held long ago:

> The essential purpose of a zoning board of appeals, so far as its power to grant variances under § 8–6(3) of the General Statutes is concerned, is to furnish some elasticity in the application of regulatory measures .... The power of the board to review, on appeal, under § 8–6(1) of the General Statutes, any order of the zoning enforcement officer and, under § 8–7, to reverse, affirm or modify that order, also supplies some measure of elasticity. This power is vested in a zoning board of appeals, both to provide aggrieved persons with full and adequate administrative relief and to give the reviewing court the benefit of the local board's judgment.

*Country Lands, Inc. v. Swinnerton,* 151 Conn. 27, 33–34, 193 A.2d 483, 486 (1963) (citations omitted). Until this variance and appeals process is exhausted and a final, definitive decision from local zoning authorities is rendered, this dispute remains a matter of unique local import over which we lack jurisdiction.[8]

## V.

For the reasons just given, the judgment of the district court is vacated. In accordance with the foregoing we also remand with the direction that the case be dismissed without prejudice to bringing a new action that is ripe for adjudication.

**UNITED STATES of America,**
**Appellant**

v.

**George ATIYEH**

---

8. We are particularly cognizant of the fact that this case stems from a zoning dispute implicating matters of local concern. *See Harlen Assocs. v. Incorporated Vill. of Mineola,* 273 F.3d 494, 505 (2d Cir.2001); *see also Congregation Kol Ami v. Abington Township,* 309 F.3d 120, 135 (3d Cir.2002). Thus, should the Murphys pursue a zoning board appeal and be dissatisfied with its disposition, an appeal to the Connecticut Superior Court, as contemplated by Connecticut General Statutes section 8–9, might be pursued. In addition, before the state courts the Murphys may wish to raise their CACRF claim, while expressly reserving their federal claims for later presentation in federal court should the need arise. *See generally Santini v. Connecticut Hazardous Waste Mgmt. Serv.,* 342 F.3d 118 (2d Cir.2003). *But see generally San Remo Hotel v. San Francisco City & County,* 364 F.3d 1088 (9th Cir.), *cert. granted,* —— U.S. ——, 125 S.Ct. 685, 160 L.Ed.2d 518 (2004).