SUTTON, J., delivered the opinion of the court, in which KETHLEDGE, J., joined. BATCHELDER, C.J. (pp. 542-54), delivered a separate dissenting opinion.
OPINION
SUTTON, Circuit Judge.
A religious order and two of its members filed this action under the Religious Land Use and Institutionalized Persons Act and the Federal and State Constitutions against the Township of Northville and its officials based on a dispute over the application of several local zoning ordinances to a residence that the order owns in the township. The district court concluded that the suit was unripe, and so do we.
I.
Since 2002, Miles Christi, an international religious order, has owned a five-bedroom house on a one-acre plot of land in a residential neighborhood in Northville, Michigan. Several fathers and brothers of the order, six in all, live there. The fathers conduct private daily masses in a small eighteen-person chapel inside the house for members of the order. Miles Christi also hosts regular Bible studies “for invited friends and their children” with attendance ranging from five (the most common) to fifteen individuals. R.l ¶ 18. Nothing on the exterior of the house suggests that the residents use it as a church or religious organization.
In March 2003, some Northville citizens wrote letters to township officials about the Miles Christi house, complaining about increased automobile traffic and the number of cars parked there and suggesting that the order was not using the house in compliance with the neighborhood’s residential zoning. Northville’s Town Planner, Maureen Osiecki, replied to at least one of the letters by saying that “the priests may use this home as their residence” and that the house was “not a church, nor a parish.” R.31-10.
The complaints did not stop there. Over the next few years, Joseph Bauer, Northville’s Ordinance Enforcement Officer, continued to receive complaints about the house. On several occasions, he drove by the property and made notes about the zoning issues implicated by the complaints, but he did not take any action.
In December 2006, a neighbor called Bauer to complain about the amount of traffic and the number of parked cars at the house. She believed that the property was being used as an office rather than as a residence. In response to these complaints, Bauer conducted more frequent surveillance of the house. On at least one occasion, he recorded the license plate numbers of the cars parked at the house.
Bauer was not the only one conducting surveillance. The fathers and brothers of Miles Christi took several photographs of an officially marked car driving by their property and recorded the times — several per day^ — when the car drove by.
On February 7, 2007, Bauer sent a letter to Father Cesar Bertolacci describing his surveillance of the property. “Follow-up observations,” he wrote, showed that, during Sunday mass, “vehicles were parked on grassy areas in violation” of the zoning ordinance. R.31-12. He asked Miles Christi to “describe[ ] the measurements of the [oratory]” and to provide “an operations plan describing activities” so that the township could “determine if the present *536 amount of parking is sufficient so vehicles do not park on grassy areas.” Id. Bauer attached a copy of the township’s parking ordinance, which provides:
When building alterations ... are to be made, or use or activity is contemplated that may produce parking demand in excess of available spaces, the Township shall require a sketch plan and other written documentation of the change or a parking study to document adequate parking is provided or will be expanded to meet anticipated needs.
Northville Code of Ordinances § 170-26.1(F). The township’s ordinances generally require that one- or two-family homes have two parking spaces per dwelling unit. See id. § 170-26.2. But for “[c]hurches, temples or other places of worship,” there must be “1 space per 3 seats or 6 feet of pews in the main unit of worship, plus any additional spaces needed for accessory uses,” and the property owners must submit “[a]n operations plan to describe all of the church-related activities ... to support the amount of parking provided.” Id.
Father Bertolacci responded by letter on March 1, 2007, describing the activities conducted at the home and the eighteen-person oratory. “In order to reduce any parking on the grass,” he added, Miles Christi was “willing to expand [their] driveway if needed.” R.31-12. Father Bertolacci “questioned] the validity of the complaints” but assured Bauer that Miles Christi wanted to do its best both to serve the community and to live responsibly within it. Id.
On March 23, 2007, several residents of the Miles Christi house met with township officials to discuss the parking issue. Joining Bauer on behalf of the township were Chip Snider, Township Manager, and Jennifer Frey, Director of Community Development. Jennifer Frey told the order that the Miles Christi house was operating as “something other than [a] single family residence” and that “they needed to provide ... an operations plan to support and justify the amount of parking they [were] provid[mg].” R.31-26 at 55-56. Ultimately, she said, Miles Christi would need to provide parking in the rear of its lot sufficient to meet peak demand, estimated at twenty to twenty-two people. When the residents explained that they could not feasibly locate additional parking in the rear of the lot, the officials told them that they would have to (1) request a variance from the zoning board of appeals to allow parking in the front yard and (2) submit a site plan to the Northville Planning Commission detailing the intended expansion of parking spaces and sufficient landscaping to block the view of parked cars from neighboring properties.
By June 5, 2007, Miles Christi had not submitted a site plan, prompting Bauer to issue a ticket for violating Ordinance § 170-33.3, which governs “[s]ite plan review procedures.” The ticket directed Miles Christi to appear in state court on June 20, 2007, which Miles Christi did. See People v. Miles Christi Religious Order, No. 07v324326A (Wayne Cnty. Dist. Ct. June 20, 2007). The state-court proceedings developed an extensive record, including depositions of members of Miles Christi and township officials discussing the events leading to the ticket.
On September 21, 2007, Miles Christi, Father Bertolacci and Brother Francisco Conte-Grand filed this action in federal court. They challenged the legality of Northville’s zoning ordinances as applied to the Miles Christi house and the conduct of township officials in enforcing the ordinances, invoking the free-exercise protections of the First and Fourteenth Amendments, the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the Michigan Constitution. They *537 sought declaratory and injunctive relief, money damages and attorney’s fees.
The state court stayed the enforcement proceeding pending the outcome of the federal action. The township defendants moved to dismiss the federal case, arguing that Miles Christi has not received a “final decision” about the application of North-ville’s zoning ordinances to their property, making the religious order’s claims unripe. The district court agreed and dismissed the complaint without prejudice, reasoning that the township’s final decision concerning the application of the zoning ordinances is still “unknown” because Miles Christi has not appealed the demand for a site plan to the zoning board. Miles Christi appeals.
II.
The ripeness doctrine encompasses “Article III limitations on judicial power” and “prudential reasons” that lead federal courts to “refus[e] to exercise jurisdiction” in certain cases. Nat’l Park Hospitality Ass’n v. Dep’t of Interior, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003). The “judicial Power” extends only to “Cases” and “Controversies,” U.S. Const, art. Ill, § 2, not to “any legal question, wherever and however presented,” without regard to its present amenability to judicial resolution. Warshak v. United States, 532 F.3d 521, 525 (6th Cir.2008) (en banc). And the federal courts will not “entangl[e]” themselves “in abstract disagreements” ungrounded in the here and now. Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); see Warshak, 532 F.3d at 525. Haste makes waste, and the “premature adjudication” of legal questions compels courts to resolve matters, even constitutional matters, that may with time be satisfactorily resolved at the local level, Nat’l Park Hospitality Ass’n, 538 U.S. at 807, 123 S.Ct. 2026; Grace Cmty. Church v. Lenox Twp., 544 F.3d 609, 617 (6th Cir.2008), and that “may turn out differently in different settings,” Warshak, 532 F.3d at 525.
To decide whether a dispute has ripened into an action amenable to and appropriate for judicial resolution, we ask two questions: (1) is the dispute “fit” for a court decision in the sense that it arises in “a concrete factual context” and involves “a dispute that is likely to come to pass”? and (2) what are the risks to the claimant if the federal courts stay their hand? Warshak, 532 F.3d at 525; see Abbott Labs., 387 U.S. at 149, 87 S.Ct. 1507. In the land-use context, the demands of “a concrete factual context” and “a dispute that is likely to come to pass” converge in an insistence on “finality,” an insistence that the relevant administrative agency resolve the appropriate application of the zoning ordinance to the property in dispute. In the related context of takings claims under the Fifth and Fourteenth Amendments, courts likewise insist that a claimant “obtain[ ] a final decision regarding the application of the zoning ordinance[s] ... to its property,” Williamson Cnty. Reg.’l Planning Comm’n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), a requirement rooted in ripeness considerations, see id. at 186-94, 105 S.Ct. 3108; Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1012-13, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). In addition to takings claims, we have applied the finality requirement to other constitutional and statutory challenges to local land-use requirements. See Grace Cmty. Church, 544 F.3d at 615 (RLUIPA); Insomnia Inc. v. City of Memphis, 278 Fed.Appx. 609, 613 (6th Cir.2008) (Free Speech Clause); Bannum, Inc. v. City of Louisville, 958 F.2d 1354, 1362 (6th Cir.1992) (Equal Protection Clause). *538 Miles Christi has not satisfied either requirement for bringing this claim now. It has not shown that “the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.” Williamson Cnty., 473 U.S. at 186, 105 S.Ct. 3108; Grace Cmty. Church, 544 F.3d at 615. And it has not shown that it will suffer any hardship by delaying a federal court decision until the zoning board acts.
No final decision. Miles Christi concedes that it has not gone to the zoning board to determine whether the ordinances require it to submit a site plan and, if so, which regulations impose this obligation and why. And it does not deny that the administrative process permits residents to seek a variance. What the religious order says instead is that Jennifer Frey’s request that Miles Christi provide a site plan, based on a determination that the home was being used in a more intensive way than residential zoning permits, amounts to the kind of final decision necessary to overcome these ripeness concerns.
This position, however, does not square with the relevant regulations. At the time the complaint was filed, the Northville Code provided that “[t]he Zoning Board of Appeals shall be responsible for interpretations to the text of [the zoning ordinances]” and shall be responsible for “interpreting] the provisions or meaning of standards of [the ordinances].” § 170-41.4(D) (2007); R.31-39 at 8. In the context of site plan review, the Code provided that “[t]he application may be tabled if it is determined ... [that] an ordinance interpretation or variance is needed from the zoning board of appeals.” § 170-33.3(G)(1) (2007); R.31-38 at 7. Today’s regulations are to the same effect, providing that “prior to initiation] of site plan review,” a property owner should appeal to the zoning board “[i]f an ordinance interpretation or variance is needed.” § 170-33.3(B)(1) (2010). An administrative appeal to the zoning board thus will resolve at least three questions, all of which lie within the zoning board’s plenary interpretive jurisdiction, about Miles Christi’s obligations or indeed whether it has any obligations at all: (1) Has Miles Christi put its house to a “more intensive use” within the meaning of § 170-33.2 of the Northville Code? (2) Is the Miles Christi house a “church” within the meaning of § 170-26.2 of the Code? and (3) Does Miles Christi have an obligation to submit a site plan in the first instance in view of the meaning of these ordinances and its request for a variance? Finality requires the input of the zoning board on these unresolved questions.
No hardship to Miles Christi. An appeal to the zoning board not only will ground this dispute in a concrete legal setting — by permitting the zoning board to clarify the township’s application of its land-use laws to this property — but it also may help Miles Christi. The zoning board may grant a variance to the religious order, or it may provide a different intensive-use determination. Both forms of relief will considerably narrow the grounds of dispute between the parties if not end the dispute altogether. Far from imposing a hardship on Miles Christi, an appeal to the zoning board may give the order the very relief it seeks: the chance to live and serve the Northville community without further inquiries, or for that matter harassment, from the neighbors and township officials.
We have been down this road before. In Grace Community Church, a township issued a special use permit to a church, and one month later the township revoked the permit after a neighbor complained that the church was not complying with the conditions of the permit. 544 F.3d at *539 615-16. The church filed a federal action challenging the revocation under RLUIPA and the Equal Protection Clause rather than appealing the revocation to the zoning board. Id. at 611. In dismissing the claims on ripeness grounds, we noted that the church had made “no effort to resolve the dispute locally”: It did not attempt “to complete the factual record, to more fully explain its position to the Commission, to seek reconsideration, or to appeal the revocation decision” to the zoning board. Id,. at 616. What was true there is just as true here.
Unlike Grace Community Church, Miles Christi responds, a voluminous record makes its and the Township’s positions “well defined.” Miles Christi Br. 44. But the existence of an extensive record— Miles Christi’s response to the township’s summary judgment motion, including exhibits, comprises over 750 pages — is not the same as “a concrete factual context,” which is what matters. Warshak, 532 F.3d at 525. Indeed, in Warshak, a case also dismissed on ripeness grounds, the record included numerous exhibits relating to government officials’ past conduct, see Warshak v. United States, No. 06-ev-00357 (S.D. Ohio June 12, 2006), but nothing that shed light on the material question of what government officials would do in the future, see Warshak, 532 F.3d at 526-27.
Nor do the parties’ summary judgment attachments, including photographs, letters, deposition transcripts and other documents, make up for the same omission that doomed an early federal resolution of the dispute in Grace Community Church: a definitive statement from the zoning board, the entity charged with interpreting Northville’s zoning ordinances, about which ordinances apply to Miles Christi and about whether Miles Christi must submit a site plan under the ordinances. As things now stand, “we have no idea,” Toilet Goods Ass’n, Inc. v. Gardner, 387 U.S. 158, 163, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), whether the township’s position, as determined by the zoning board, see § 170-41.4(D) (2007); § 170-33.3(0(1) (2007); § 170-33.3(B)(1) (2010), is (1) that Miles Christi must submit a site plan because there has been a “change in the use of land ... to a more intensive use, in terms of parking,” § 170-33.2, (2) that Miles Christi must submit a site plan because its property is a “[c]hurch[], templet ] or other place[ ] of worship,” § 170-26.2, or (3) that the property is a “single-family home on an individual lot” and therefore “exempt from site plan review,” § 170-33.2(A). We might have a sense of what a few township officials think but, by filing this lawsuit when it did, Miles Christi pretermitted the opportunity to submit this issue to the body given decision-making authority over it. How can we know whether the township “has gone too far,” as Miles Christi claims, until we “know[] how far the regulation goes,” MacDonald,, Sommer & Frates v. Yolo Cnty., 477 U.S. 340, 348, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986), and indeed which regulations apply?
Even aside from these concerns, we cannot say as Miles Christi does that the Township’s position is “well defined.” During the state court proceedings, Frey testified that she did not know under which ordinance Bauer was going to issue a ticket, only that it would be a ticket for “[violations of the zoning ordinance.” R.31-26 at 62. She also testified that she had not classified the Miles Christi house as a church but had simply determined that it was “something other than a single family residential” home. Id. at 54-55. Yet, according to the complaint, which we must take as true at this stage of the case, Frey previously told Miles Christi that it was a “small church” under the zoning ordinances and as a result would have to *540 provide additional parking. R.l ¶ 41. The Township’s back-and-forth positions may well bolster Miles Christi’s efforts to establish the bona fides of its claims on the merits, but they undermine any notion that the Township’s position is sufficiently “well defined” to ripen this dispute into a matter appropriate for judicial resolution.
Miles Christi protests that, as a matter of hardship, the township put it to a “Hob-son’s choice” of incurring “the costs and burdens associated with submitting” a site plan on the one hand or continuing constitutionally protected activities on the other. Miles Christi Br. 31-32, 51. But that is a false dichotomy. There is a third option— going to the zoning board — which may put this entire dispute to rest and which at a minimum makes Miles Christi’s choice anything but Hobsonian. The zoning board may determine, as a matter of interpretation, that the Northville Code does not require it to submit a site plan. Or it may determine, as a matter of discretion, administrative grace if you will, that Miles Christi should get a variance. Either way, Miles Christi will be able to continue its current use of the house without incurring additional costs or burdens.
Miles Christi adds that the township’s actions have had a “chilling effect” on its constitutionally and statutorily protected activities: Threatening to ticket vehicles parked on the lawn, conducting surveillance of the religious order, recording license plates and issuing a ticket for a zoning violation all have “limit[ed]” the order’s “religious activities.” Miles Christi Br. 51-52. It is true that the existence of a constitutional claim, particularly a First Amendment claim, affects the hardship component of the ripeness inquiry. See Norton v. Ashcroft, 298 F.3d 547, 554 (6th Cir.2002). And it may be true that North-ville thus far appears to have an undeveloped sense for the concept of religious liberty, as illustrated by this statement at oral argument: “[Fjootball parties and tailgate parties” do not change “the residential nature of the use; whereas, what they’re doing here, they’re doing religious education and they’re worshipping.” Not just the Framers of the Constitution but Congress itself has distinguished between the protections afforded these distinct activities: While the United States Code contains a Religious Freedom and Restoration Act and a Religious Land Use and Institutionalized Persons Act, one will search in vain for a Freedom to Watch Football on a Sunday Afternoon Act.
But a claim does not become ripe at the first whiff of governmental insensitivity or whenever a government official takes an adverse legal position against someone, even if one potential response is to curtail protected activities. One justification for the ripeness doctrine is that it avoids the premature resolution of constitutional questions, including First Amendment questions. Warshak, 532 F.3d at 525; Grace Cmty. Church, 544 F.3d at 615. And “the existence of a ‘chilling effect,’ even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action.” Younger v. Harris, 401 U.S. 37, 51, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The answer instead is to look at each case to determine the consequences of staying our hand. That does not pose a problem here, as Miles Christi may potentially resolve the issue (at less expense) by appealing to the zoning board, see Northville Ordinance § 170-41.4(D) (2007); § 170-33.3(G)(1) (2007); § 170-33.3(B)(1) (2010), a route that does not require Miles Christi to cancel any Bible studies, masses or other religious activities and a route that does not require it to pay for an engineering study in the event the township rejects its interpretation of the ordinances or fails to give it a variance.
*541 But Williamson County, Miles Christi protests, says that claimants need not “seek review of an adverse decision and obtain a remedy” in a state forum or otherwise “exhaust” its claims in the state courts, 473 U.S. at 193, 105 S.Ct. 3108, and that effectively is what the district court made it do. Yet the Northville Code provides that, when “an ordinance interpretation or variance is needed,” a property owner should go to the zoning board during or before the site plan review process, not after. § 170-33.3(0(1) (2007); § 170-33.3(B)(1) (2010). Rather than merely “review[ing]” the “initial decision[ ]” of township officials made during the site plan review procedures, the zoning board is “empowered ... to participate in the ... decisionmaking” process from the outset, and it is only through that process that the township can provide what Williamson County demands: “a definitive position on the issue.” 473 U.S. at 193, 105 S.Ct. 3108. Because Miles Christi’s claims turn on the meaning of the ordinances, they will not ripen until the zoning board weighs in, a precondition that goes to finality, not to exhaustion of other remedies.
The finality rule, we acknowledge, is a “prudential requirement[ ],” and we need not follow it when its application “would not accord with sound process.” Lucas, 505 U.S. at 1012, 112 S.Ct. 2886. But for the reasons given, we fail to see why this prudential requirement should be ignored here. Both parties, to say nothing of the federal courts, may benefit from the zoning board’s input, and the claimant, Miles Christi, faces no jeopardy in the interim, in view of the suspension of the state-law ticketing proceeding.
Murphy v. New Milford Zoning Commission, 402 F.3d 342 (2d Cir.2005), does not alter this conclusion but indeed bolsters it. The Murphy claimants hosted weekly prayer meetings in their home. Id. at 345. After several complaints from neighbors, the town informed the Murphys that the zoning laws barred them “from hosting regularly scheduled meetings exceeding twenty-five non-family members.” Id. at 344. The town eventually issued a cease and desist order, and the Murphys filed a lawsuit in federal court rather than appealing to the zoning board. Id. at 345. The Second Circuit concluded that the Murphys’ claims, even those under the First Amendment and RLUIPA, were unripe. Id. at 354. In reaching this conclusion, the court noted, as we have noted, that “the ripeness doctrine is somewhat relaxed” in First Amendment cases. Id. at 351. The court distilled from its prior (Second Circuit) cases a two-part “preliminary inquiry”: First, have the plaintiffs “experienced an immediate injury” as a result of the town’s actions? And second, would compliance with the finality requirement serve to “further define their alleged injuries?” Id. After considering these questions, Murphy concluded that there was no reason to set aside the finality requirement. Just as the cease and desist order in Murphy did not give rise to an immediate injury worthy of immediate judicial intervention, see id., so also here.
There is, to be sure, one difference between the Murphys’ case and today’s case: Northville issued a ticket to Miles Christi, while the town did not do the same to the Murphys. Yet it is not clear which way the existence of this state court enforcement action cuts. In the criminal context, a pending state court action concerning the same issues implicated by a federal civil action requires the federal courts to abstain from resolving the civil action until the state courts have acted. Younger, 401 U.S. at 40-41, 91 S.Ct. 746. And the Younger abstention doctrine applies to at least some types of state court administrative enforcement actions. Huffman v. Pursue, Ltd., 420 U.S. 592, 594, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); cf. Execu *542 tive Arts Studio, Inc. v. City of Grand Rapids, 391 F.3d 783, 791 (6th Cir.2004). But we need not resolve this point today because this feature of Murphy makes no difference for a separate reason: North-ville’s ordinances expressly provide that “[a]n appeal [to the zoning board] shall stay all proceedings in furtherance of the action appealed....” § 17(M1.2(BX3). Under the local law, any potentially coercive effect caused by a ticket can be stopped in its tracks by the modest step of appealing to the zoning board. The same was true in Murphy. At the same time that the court acknowledged that town officials did not have “any arresting or fining power,” it noted that an appeal to the zoning board would stay any enforcement proceedings. 402 F.3d at 351. North-ville’s issuance of a ticket, subsequently stayed by operation of law, does not require the federal courts to resolve Miles Christi’s action now.
III.
For these reasons, we affirm.