DISSENT
KETHLEDGE, Circuit Judge,
dissenting.
In this case the defendant Van Burén County took property worth $206,000 to satisfy a $16,750 debt, and then refused to refund any of the difference. In some legal precincts that sort of behavior is called theft. But under the Michigan General Property Tax Act, apparently, that behavior is called tax collection. The question here is — or at least in my view should be— whether the County’s action is a taking under the federal Constitution.
Our court declines to answer that question because it holds — under the Supreme Court’s decision in Williamson County Reg’l Planning Comm’n v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108 (1985) — that the plaintiffs here must seek a remedy in state court rather than federal. I respectfully disagree with that conclusion. To begin with first principles: the federal courts indisputably have jurisdiction over this case, see 28 U.S.C. § 1331, and the federal courts “have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.” Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). But Williamson County singles out takings claims for disfavored treatment so far as the availability of a federal forum is concerned. Specifically, if a plaintiff alleges that a State has violated the federal Takings Clause, and state law provides a “reasonable, certain, and adequate” remedy for the violation, then the plaintiff must pursue that remedy in state court. Williamson County, 473 U.S. at 194, 105 S.Ct. 3108. As the majority points out, however, this doctrine is merely “prudential,” which is to say discretionary and judge-created. See Suitum v. Tahoe Reg’l Planning Agency, 520 U.S. 725, 733-34, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997). Thus we may dispense with it “when its application ‘would not accord with sound process.’ ” Miles Christi Religious Order v. Twp. of Northville, 629 F.3d 533, 541 (6th Cir. 2010) (quoting Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1012, 112 S.Ct. 2886 (1992)).
We have neither certainty nor sound process here. Whether Michigan substantive law provides a remedy for the type of taking alleged here is hardly certain. True, Michigan law provides a cause of action for so-called “inverse condemnations,” in which the government takes a property interest without a formal exercise of eminent domain. See Merkur Steel Supply, Inc. v. Detroit, 261 Mich.App. 116, 680 N.W.2d 485, 495 (2004). And in adjudicating those claims the Michigan courts have recognized what they call “de facto” takings, for which “no exact formula” exists. Id. But the Michigan courts have not yet determined, as a matter of state law, whether a local government’s appropriation of property pursuant to the taxing power generally, or to the General Property Tax Act in particular, is a taking to the extent the government takes property worth more than the amount of taxes owed. Perhaps the Michigan courts will recognize this kind of inverse-condemnation claim as viable, not least because of the gross injustice — both equitably, and from the standpoint of the interests protected by takings law — caused by the kind *824 of governmental action on display here. (In the County’s defense, the Michigan Act appears actually to require the County to short the taxpayer the difference between the value of the property forfeited and the amount of taxes and penalties owed. See M.C.L. § 211.78m(8).) But it overstates matters to say the Michigan courts’ recognition of this type of inverse-condemnation claim is “certain.”
Equally problematic is the jurisdictional uncertainty that awaits the plaintiffs in state court. When they file their inverse-condemnation claim there, they must choose between two courts: the state circuit court, which is a trial court of general jurisdiction, or the state court of claims, which (like its federal counterpart) has jurisdiction over monetary claims “against the state or any of its departments[.]” See M.C.L. §§ 600.605 (circuit court), 600.6419 (court of claims). But no matter which court the plaintiffs choose, they will face, a strong argument that they chose wrongly. The majority suggests the plaintiffs should file in circuit court, which is remarkable given the statute’s plain statement that the court of claims’s jurisdiction over monetary claims against the state or its departments “is exclusive[,]” M.C.L. § 600.6419(1), and given the Michigan Court of Appeals’s plain holding that “[t]he Court of Claims is the proper forum in which to seek redress where a plaintiff alleges an already accomplished inverse eondemnation[.]” Lim v. Mich. Dep’t of Transp., 167 Mich.App. 751, 423 N.W.2d 343, 345 (1988). Perhaps, as the majority suggests, the Michigan courts will distinguish Lim on the ground that the plaintiffs here are suing a subdivision of the State rather than the State itself. But perhaps not, since counties are instrumentalities of the State. See, e.g., Wayne Cty. Bd. of Comm’rs v. Wayne Cty. Airport Auth., 253 Mich.App. 144, 658 N.W.2d 804, 828 (2002); Pomann, Callanan & Sofen, P.C. v. Wayne Cty. Dep’t of Soc. Servs., 166 Mich. App. 342, 419 N.W.2d 787, 789 (1988). And the Michigan Court of Appeals has held that a monetary claim against a county agency belongs in the court of claims, whose exclusive jurisdiction “encompasses all claims against the state and its instru-mentalities for money damages.” Pomann, Callanan & Sofen, 419 N.W.2d at 789.
That said, the jurisdiction of the court of claims over this case is likewise uncertain: under another statutory provision, no claimant “who has an adequate remedy upon his claim in the federal courts” may . bring suit against the state or its departments in the court of claims. M.C.L. § 600.6440. Given that the plaintiffs assert a federal constitutional claim and that the federal courts exist in part to provide a remedy for such claims, § 600.6440 seems to direct these plaintiffs to litigate their claims in federal court rather than state.
Thus, as read by the majority, Williamson County sends these plaintiffs to state court, while state law directs them back to federal. The majority resolves this dilemma by declaring the state jurisdictional regime unconstitutional to the extent it would require a federal constitutional claimant to bring suit in federal court. Maj. Op. at 819-22. And thus, contrary to what the Michigan statutes actually say, the majority opines that the plaintiffs may bring suit in the state circuit court.
At this point one senses we have lost our constitutional bearings. The plaintiffs have asked us to adjudicate a claim arising under the federal Constitution, which is the most important type of claim that we can adjudicate. The claim itself is substantial: that, when a state takes fee simple to property in satisfaction of a tax obligation, the state effects a taking to the extent the property is worth more than the taxes and penalties owed. Complaint ¶ 4. Congress has granted us jurisdiction over that claim. We have a strict duty to exercise that *825 jurisdiction. Meanwhile, the state jurisdictional statute, specifically § 600.6440, expresses an affirmative preference that we adjudicate the claim. And yet — in the interest of “federalism,” no less — we reject the State’s preference, declare the state jurisdictional regime (as set forth by the statute’s plain terms) unconstitutional as applied here, disregard our strict duty to exercise the jurisdiction assigned to us by Congress, and send the plaintiffs back to state court, where they face procedures that as a practical matter are “confusing and uneertain[.]” Kruse v. Village of Chagrin Falls, 74 F.3d 694, 698 (6th Cir. 1996). The result is not “sound process” but a welter of contradictions.
One further irony remains. The majority cites Haywood v. Drown, 556 U.S. 729, 129 S.Ct. 2108 (2009), as support for its conclusion that Michigan’s jurisdictional regime cannot, consistent with the federal Constitution, mean what its relevant jurisdictional provisions say. In Haywood, the Supreme Court held that state jurisdictional statutes that are designed to discriminate against “disfavored federal claim[s]” or that serve “as a device to undermine federal law” violate the Supremacy Clause. 556 U.S. at 738-89, 741, 129 S.Ct. 2108. But here, in clear contrast to Haywood (which involved suits brought by inmates against corrections officers), there is no reason at all to think that, in directing federal takings claims to federal court, the State sought ' to undermine or discriminate against those claims in any way. Quite the contrary: if anyone has undermined the adjudication of federal takings claims against states and local governments, it is the federal courts — by the application of Williamson County.
I respectfully dissent.