# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-1858

MAIRA GUZMAN,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:05-cv-06617—**Blanche M. Manning**, *Judge*.

ARGUED SEPTEMBER 12, 2011—DECIDED AUGUST 2, 2012

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Maira Guzman will likely never forget June 14, 2005. She was seven-and-a-half months pregnant. Her husband went to work early that morning, leaving her home alone. As she lay in bed, undressed and talking on the phone, she heard the doorbell ring and the sound of someone knocking on her front door. She slipped on a loose-fitting t-shirt, and began walking toward the door. Sergeant Marvin

Bonnstetter of the Chicago Police Department burst through the door as Guzman approached it. Up to ten officers wearing body armor rushed into the apartment, many with their guns drawn. Guzman, fearful and crying, was ordered to lie face down on the floor. When she tried to position herself more comfortably, Officer Danilo Rojas grabbed her and forced her down, pressing her pregnant belly firmly against the floor. The entire team of approximately seventeen Chicago police officers and FBI agents—members of a Joint Gang Task Force—then executed a search warrant, searching the apartment for up to an hour. Guzman sued the City of Chicago, Sergeant Bonnstetter, and Officer Rojas, claiming that the search and seizure were illegal. The district court agreed and entered summary judgment in her favor, finding Bonnstetter and Rojas liable and leaving only the question of damages to be resolved.[1]

During the damages-only trial, Guzman provided evidence of the more than $5,000 in medical expenses she incurred for treatment and monitoring of pre-term contractions that she experienced after the raid. Over Guzman's objection, the district court allowed the defendants to testify that the search and seizure were both legal and reasonable and that other Task Force members might have caused Guzman's injuries. Con-

---

[1] The district court granted the City of Chicago's motion for summary judgment on Guzman's state-law respondeat superior claim, and we affirmed on appeal. *Guzman v. City of Chi.*, 565 F.3d 393, 399 (7th Cir. 2009) (reinstating Guzman's search and seizure claims only ).

sistent with this ruling, the district court instructed the jury at the close of the evidence that Guzman had to prove that Bonnstetter and Rojas were "personally involved" in the harmful conduct, and Bonnstetter and Rojas could not be held "liable" for the conduct of "other employees." The court also instructed the jury to award nominal damages if Guzman failed to prove that any of her damages "were the direct result" of Bonnstetter's or Rojas' conduct. Guzman was awarded one dollar and now appeals, arguing that both instructions were erroneous and prejudicial. We agree. The defendants' theory of the case, the evidence they introduced, and the liability instruction likely confused the jury, and so we reverse and grant a new trial on damages.

## I. BACKGROUND

On June 14, 2005, the Chicago Police Department and FBI's Joint Gang Task Force raided Maira Guzman's home and seized her in the process. The Task Force was acting on a warrant to search for a handgun in the possession of Ruben Estrada, a felon on bond, at a single-family residence located at 1536 West Walton in Chicago. Guzman lived at 1536 West Walton. Her apartment was on the second floor of a multi-use building; the building had a business storefront and an unoccupied residential unit on the first floor. The Task Force's confidential informant had supplied inaccurate information. But the officers failed to immediately call off the search once they became aware that the building at 1536 West Walton was not the single-family residence described by the confidential source.

Guzman sued under 42 U.S.C. § 1983, alleging among other things that her search and seizure violated the Fourth Amendment. After the district court granted summary judgment to the defendants on five of Guzman's eight claims and declined supplemental jurisdiction over the rest, we reversed and remanded the case for reconsideration of Guzman's unlawful search and false arrest claims against Sergeant Bonnstetter and Officer Rojas. *Guzman v. City of Chi.*, 565 F.3d 393, 399 (7th Cir. 2009). In so doing, we held that the search warrant was facially valid, but improperly executed. *Id.* at 397-98.

On remand, the district court granted summary judgment in favor of Guzman on Bonnstetter's and Rojas' liability for the unlawful search and seizure. The court then held a jury trial on damages.

During the four-day trial on damages, Guzman—who speaks only Spanish—testified that after Sergeant Bonnstetter forced her door open to allow the Task Force to enter her apartment, he went to the back door of her apartment to let more officers in. She told the jury that she began to cry when the officers entered her home, and that she was immediately instructed to lie face down on the floor. She testified that when she tried to get up after landing on the floor in an uncomfortable position due to her pregnancy, Officer Rojas grabbed her and forced her back to the floor. Guzman stated that she was held face down on the floor for approximately five to ten minutes, and that she was scared and in pain because her abdomen was being pressed against the floor. She explained that when she was finally

allowed to get up, she sat in a chair and watched between fifteen and twenty officers search her apartment, turning over sofas, going through drawers, and dumping out cereal boxes. The search finally ended, according to Guzman, about an hour after it began.

Guzman's husband also testified at trial. He told the jury that he left the apartment at around 4:00 a.m. to go to work, but returned to check on his wife after a family member called and informed him of the search. He claimed that when he returned home, police officers prevented him from entering the apartment for about fifteen minutes. And when they finally let him in, he ran upstairs and found his wife crying. He also told the jury that Guzman complained of not feeling well and having stomach pains, so he tried to take her to her obstetrician, but the clinic that she usually attended was closed.

Guzman instead went to the emergency room at Norwegian Hospital. There, Dr. Alfonso Bardales noted that Guzman was experiencing contractions. Guzman's contractions eventually subsided and she was discharged after a twenty-three hour monitoring period. Guzman incurred $5,477.35 in expenses for her hospital stay. Before the search, Guzman had never experienced problems with her pregnancy, nor had she ever gone to the emergency room for any pregnancy-related issues. Guzman testified that she remains traumatized and she sometimes cannot sleep.

The defendants offered a very different version of the events. They contended that the search only lasted twenty

minutes and Guzman sat in a chair the entire time. Officers testified that a Spanish-speaking officer spoke with Guzman upon entry to tell her that she was not the target of the warrant. They also claimed that nothing except the front door was broken during the search, and that the search was "not as bad" as most. They testified that Guzman's landlord fixed the broken door at no charge and her family members cleaned up the mess caused by the search.

Regarding Guzman's injuries, the officers insisted that Guzman never told anyone during the search that she was pregnant, in pain, or in need of medical attention. They also said they could not discern that she was pregnant because of the baggy t-shirt she was wearing, and that Guzman did not seek immediate medical attention after the search. The officers pointed out that Guzman called her landlord to request that he watch her apartment before going to the hospital, she waited for an hour at the hospital before being admitted, and she told the nurse who admitted her that she was experiencing a level of pain between one and two (on an escalating scale from one to ten), rather than between two and four as she testified during the trial.

The defendants also highlighted Guzman's medical records, which showed that she reported having been made to lie on the floor for one or two minutes and that she was not anxious or depressed. The medical records also indicated that Guzman reported having sexual intercourse twenty-four hours before she was examined, which could have caused her contractions. The records

also showed that Guzman had an elevated white blood cell count, possibly indicative of a urinary tract infection, which might have also caused the contractions. Finally, the defendants pointed to Guzman's report of experiencing similar abdominal pain about a week after the search as evidence that they did not cause her injuries.

At the close of the evidence, the district court instructed the jury that "the search . . . by Sergeant Bonnstetter and the detention of Maira Guzman by Officer Rojas" had been determined to be unconstitutional and that the jury needed only to decide damages. Of relevance here, the district court also gave the following two instructions. The first, a liability instruction requested by the defendants and based on the Seventh Circuit Pattern Jury Instruction 1.25,[2] stated:

---

[2]   The pattern instruction states:

You must give separate consideration to each claim and each party in this case. [Although there are [number] defendants, it does not follow that if one is liable, any of the others is also liable.] [Although there are [number] plaintiffs, it does not follow that if one is successful, the others are, too.]

[If evidence was admitted only as to fewer than all defendants or all claims:] In considering a claim against a defendant, you must not consider evidence admitted only against other defendants [or only as to other claims].

Pattern Civil Fed. Jury Instructions for the Seventh Cir. 1.25 (2009).

> Plaintiff must prove by a preponderance of the evidence that Defendants Marvin Bonnstetter and Danilo Rojas were personally involved in the conduct that Plaintiff complains about.

> You may not hold Defendants Marvin Bonnstetter or Danilo Rojas liable for what other employees did or did not do.

The second instruction, also requested by the defendants, was a nominal damages instruction. It stated in relevant part: "If you find that the plaintiff has failed to prove any damages that were the direct result of Defendants' conduct, you must award Plaintiff one dollar."

After deliberating, the jury awarded Guzman one dollar. She appeals, arguing that both the liability and the nominal damages instructions were erroneous and prejudicial.

## II. ANALYSIS

Guzman contends that the district court erred by instructing the jury on liability and nominal damages during this damages-only trial. Guzman claims that those errors were prejudicial both individually and cumulatively because they likely confused the jury. The defendants concede that the liability instruction was improper given the narrow scope of the trial, but argue that the error was harmless because the instruction cor-

rectly stated the law.[3] They also insist that the nominal damages instruction was appropriate because the jury could have concluded that Guzman did not suffer any compensable injury.

We generally review a district court's decision to give a particular jury instruction for an abuse of discretion. *United States v. Villegas*, 655 F.3d 662, 669 (7th Cir. 2011). "We consider a district court's jury instructions with deference, analyzing them as a whole to determine if they accurately state the law and do not confuse the

---

[3] The defendants also argue that Guzman forfeited her right to challenge the liability instruction as prejudicial by not fully developing the argument on appeal, particularly by not using the word "prejudice" in her initial brief. But Guzman's opening brief details her position that the instruction might have (1) led the jury to think that Guzman needed to, but had not shown, that Rojas or Bonnstetter were the ones that caused her injuries, or (2) led the jury to think that it could not hold the two defendants responsible for damages caused by other officers. We think these arguments raise a claim of prejudice. *See United States v. Quintero*, 618 F.3d 746, 753 (7th Cir. 2010) (explaining that prejudice results if an instruction likely confused the jury). Therefore, we consider Guzman's argument sufficiently developed to avoid forfeiture. *See Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 852 n.6 (7th Cir. 2002) (quoting *Spath v. Hayes Wheels Int'l-Ind. Inc.*, 211 F.3d 392, 397 (7th Cir. 2000)) ("Perfunctory and undeveloped arguments are waived, especially when, as here, a party fails to develop the factual basis of a claim on appeal and, instead, merely draws and relies upon bare conclusions." (citation and internal quotation marks omitted)).

jury." *Aliotta v. Nat. R.R. Passenger Corp.*, 315 F.3d 756, 764 (7th Cir. 2003) (citation omitted). "This inquiry requires us to first determine whether an instruction misstates or insufficiently states the law and, if legally improper, then to determine whether the instruction could produce prejudice by a confusing or misleading jury instruction." *Cruz v. Safford*, 579 F.3d 840, 843 (7th Cir. 2009) (citing *Aliotta*, 315 F.3d at 764).

### A. The Liability Instruction Should Not Have Been Given

There is no dispute that the district court should not have instructed the jury on liability during this damages-only trial. Nor could there be. The purpose of a damages-only trial is to determine the amount of damages, not the defendants' liability. In fact, liability *must* be resolved before the question of damages is reached. *See Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 890-91 (7th Cir.1995) (explaining that in bifurcated proceedings, "the fact of injury belongs in the first trial and the quantification of the injury by means of an assessment of damages in the second"). Here, the defendants' liability was settled by summary judgment. For their part, the defendants agree that the instruction should not have been given, but they argue that the error was harmless. We are not convinced.

Our prejudice analysis is guided by common sense, and considers whether the district court's jury instructions as a whole were confusing or misleading. *Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 433 (7th Cir. 2009).

So we ask, in light of the other instructions, the evidence, and the arguments advanced by the parties, whether the "correct message [was conveyed] to the jury reasonably well," such that the erroneous instruction likely made no difference in the outcome. *See Gile v. United Airlines, Inc.*, 213 F.3d 365, 375 (7th Cir. 2000) ("United is correct that the jury instruction was improper under *Sutton*, but United is wrong to say that it made any difference here.").

Here, it bears repeating that this was a damages-only trial. The defendants' liability had already been established. So this stage of the litigation should have only been about quantifying Guzman's damages. Indeed, only three issues needed to be resolved: what injuries did Guzman sustain, were they proximately caused by the unlawful search and seizure, and what amount of damages would reasonably and fairly compensate her for those injuries. *See, e.g., Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044 (7th Cir. 2002) ("[T]he ordinary rules of tort causation apply to constitutional tort suits."); *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999) ("[A] plaintiff must demonstrate both that he has suffered an 'actual' present injury and that there is a causal connection between that injury and the deprivation of a constitutionally protected right caused by a defendant."); *see also* Pattern Civil Fed. Jury Instructions for the Seventh Cir. 7.23 (2009).

The record shows, however, that the trial was not limited to simply quantifying Guzman's compensable damages; rather, the defendants consistently attempted

to inject into the trial evidence and arguments tending to disclaim their liability. In fact, it seems that the defendants' entire theory of the case was that the search and seizure were legal and reasonable, and that if Guzman suffered harm it was caused by Task Force members other than the two named defendants. This is borne out by the defendants' opening statement. Counsel told the jury that Bonnstetter and Rojas "believed that their search of the residence was proper, and they believed the detention of Ms. Guzman was proper." Counsel then sought to explain that "[a] search warrant is a legal document signed by a judge that allows law enforcement officers to search a premises and seize evidence . . . ." Guzman objected to both of these statements, and the court sustained her objections and instructed the jury "to disregard what counsel has said other than as it pertains to the damages sustained by the plaintiff herein."

Undeterred, the defendants later testified along these same lines, insisting that the warrant and search were legal and reasonable. Each time the subject of liability was broached, Guzman's counsel objected. But the district court allowed some of this evidence in. One exchange during Sergeant Bonnstetter's direct examination is illustrative.

> Q. Okay. Can you tell the jury what a search warrant is?
>
> A. A search warrant is a legal document that's signed by a judge that authorizes law enforcement to enter upon somebody's house or premise to look for evidence. It names the—

> PLAINTIFF'S COUNSEL:   Objection, Your Honor, motion in limine.

THE COURT: Sidebar.

(Discussion at sidebar on the record.)

> THE COURT: Counsel, I appreciate the fact that you believe this case is all about damages, but there are two sides to all lawsuits. They have a right to introduce their witnesses and provide their credentials, et cetera. I don't quite understand your—

> PLAINTIFF'S COUNSEL: I agree, Judge, but what he just said was that a search warrant authorizes a police officer to enter an apartment and search, sending the message to this jury that what he did was authorized.

> THE COURT: You'll have to—you can cross-examine him on that and elicit from him that the search warrant has to name the proper people, et cetera.

> PLAINTIFF'S COUNSEL: That's fine.

Sergeant Bonnstetter then testified that he called off the search after he realized that the information provided by the confidential informant did not match what he observed inside Guzman's building. This testimony implied that the warrant was properly executed. *See Guzman*, 565 F.3d at 399.

As the trial advanced, the defendants continued to introduce evidence of non-liability, and Guzman's

counsel consistently objected, arguing that the evidence related not to damages but to "whether this search was constitutional." He noted that the defendants were attempting to convince the jury that "their conduct was reasonable, was not blameworthy, and [that the jury should] not give Ms. Guzman compensation for injuries she suffered as a result of their search which has been held to be unreasonable and unconstitutional." The record suggests that counsel's suspicion was well-founded.

Even though the district court reiterated that liability had been settled and the defendants should not try to put it in issue, the defendants continued to raise it. For example, Sergeant Bonnstetter testified that other members of the Task Force had "broke[n] into little groups and started searching throughout the apartment," but he personally had only "observe[d] them." Officer Rojas took a similar position:

> Q. Did you search anywhere inside the Guzman residence?
>
> A. No, my job is not to search. Usually what the sergeant assigns me is to guard duty, and the sole purpose there is to keep everything under control and make sure it doesn't turn into chaos. I did not search anything.

Both officers also testified that they did not know Guzman was pregnant at the time of the raid. And, even though it had already been established that *some* officers had their guns drawn when they entered Guzman's home, Sergeant Bonnstetter told the jury that he could

not remember if he drew his weapon, and Officer Rojas maintained that he was certain that he did not have his gun drawn when he entered Guzman's residence. Officer Rojas testified that he was there just to "calm everybody down," so there was "no need for me to have my gun out."

From the outset, the defendants sought to raise the specter of doubt about the unreasonableness and illegality of the search and seizure. At one point during the trial, the defendants introduced evidence that a gun was found on Guzman's property—even though the district court in limine excluded that evidence because liability was settled. Defense counsel asked Officer Beth Kreppein: "Did you find a gun in Ms. Guzman's apartment?" She answered, "Not inside, no." Then counsel asked, "There was a rusty inoperable old gun in the back?", soliciting the response, "I know a gun was located out back . . . I had heard that it was old and rusty, but I didn't actually see it or log it into evidence." Guzman's counsel immediately moved for a mistrial, but the district court denied the motion.

Guzman argues that the gravamen of the defense's theory was that the search and seizure were reasonable and some other Task Force members might have caused Guzman's injuries but—as defense counsel consistently made clear—those officers were not named in this law-suit. Defense counsel drove home this point in closing:

> I think what is important to focus on here is that you need only decide what damages were the direct result of the defendants' unconstitutional conduct. . . .

> She has to prove by a preponderance of the evidence that Officers Bonnstetter and Rojas were personally involved in the conduct that she is complaining about. You cannot hold them liable for what other people did or did not do. Okay?

We agree that defense counsel put liability in issue and hold that the defense's theory and evidence, coupled with the liability instruction, likely confused the jury by converting this damages-only trial into one about liability. The jury was consistently asked to assess whether the defendants' personal conduct (Bonnstetter in leading the entry team and supervising the search, and Rojas in serving guard duty) caused Guzman's injuries. But the question should have been whether Guzman's injuries were proximately caused by the unlawful search and seizure. *See Carey v. Piphus*, 435 U.S. 247, 264 (1978) ("[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights."); *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044 (7th Cir. 2002) ("[W]hen an illegal arrest sets off a chain of indignities . . . [the victim] is entitled to obtain damages for these indignities . . . [f]or they are foreseeable consequences of the illegal arrest, and the ordinary rules of tort causation apply to constitutional tort suits."). And, contrary to the defendants' contention, we cannot say the remaining jury instructions somehow operated to cure this defect. Indeed, the other instructions might have compounded the problem by requiring the jury to only award damages for the harm that Guzman proved was "a direct result of the Defendants' actions" and defining "Defendants" as

Sergeant Bonnstetter and Officer Rojas. Therefore, we hold that the district court's decision to instruct the jury on liability in this damages-only trial was both erroneous and prejudicial. Guzman is entitled to a new trial. *See, e.g., Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 828 (7th Cir. 2010) (remanding for a new trial in light of prejudicial verdict form and instructions).

## B.  The Nominal Damages Instruction

Guzman also appealed the nominal damages instruction, which stated, "If you find that the plaintiff has failed to prove any damages that were the direct result of Defendants' conduct, you must award Plaintiff one dollar." Because we are remanding this case to the district court for a new trial on damages, we note that "nominal damages, of which [one dollar] is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury." *Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999). Consequently, a nominal damages instruction might be appropriate if the evidence establishes that the Guzman did not suffer a provable injury. *See id.* It might also be appropriate if the jury could reasonably conclude that Guzman's alleged injury is not credible, or that Guzman's injury has "no monetary value" or is "insufficient to justify with reasonable certainty a more substantial measure of damages." *Cf. Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir. 1996) (citation and internal quotation marks omitted) (applying the standard in the excessive force context). But a court should use caution in giving

the instruction because an unlawful search or seizure will often produce, at a minimum, a compensable claim for loss of time. *See Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir. 2003) ("For false imprisonment, upon pleading and proving merely the unlawful interference with his liberty, the plaintiff is entitled to general damages for loss of time and humiliation or mental suffering." (citation and internal quotation marks omitted)). *But see Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 209 n.30 (4th Cir. 2002) (citing *Norwood v. Bain*, 166 F.3d 243, 245 (4th Cir. 1999) (en banc)) (explaining that a loss of time award requires something more than a brief detention).

There is no question that the officers in this case searched Guzman's home and seized her in the process. The defendants claim the search and seizure lasted only twenty minutes; Guzman alleges it was closer to an hour. Regardless of how the jury might resolve this factual dispute, Guzman's time was lost. If the defendants request a nominal damages instruction on remand, we suggest that the district court proceed with caution and explain on the record the rationale for its decision.

## III. CONCLUSION

For the reasons stated above, the judgment of the district court is REVERSED, and this case is REMANDED for a new trial on damages. Circuit Rule 36 shall apply on remand.