In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 18-1432

THE CHURCH OF OUR LORD AND SAVIOR JESUS CHRIST,

*Plaintiff-Appellant,*

*v.*

CITY OF MARKHAM, ILLINOIS

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-04079 — **Ronald A. Guzmán**, *Judge.*

———————————

ARGUED OCTOBER 31, 2018 — DECIDED JANUARY 17, 2019

———————————

Before FLAUM, EASTERBROOK, and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* In the City of Markham, Illinois, 16018 South Spaulding Avenue (the "Property") is home to The Church of Our Lord and Savior Jesus Christ. We use the word "home" literally and figuratively: the church converted a single-family residence on the Property into its house of worship. The Property's location in a residential area, and the church's ensuing zoning battles with the city, give rise to this lawsuit.

For more than 15 years, the church's congregation has gathered at the Property for worship services, choir rehearsals, Bible studies, and the like. As the church grew, it remodeled the house to better accommodate its new purpose. This brought the church into contact with the city's administration through permit applications, property inspections, and similar zoning-related interactions.

The parties dispute what the city knew about the church's use of the Property, and when, but such issues are largely irrelevant at this juncture. What matters (and is undisputed) is that the city sought an injunction in state court to halt the church's operation on the Property without a conditional use permit, prompting the church to file an application for such a permit, which the city denied. All that occurred before this case began.

Denied a conditional use permit and facing a possible court order enjoining its operation, the church brought this lawsuit challenging the city's zoning code under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), and the Illinois Religious Freedom Restoration Act, 775 ILL. COMP. STAT. 35/1 *et seq.* The church contends the city's zoning code treats religious uses of property on unequal terms with analogous secular uses and unreasonably limits where religious organizations may locate in the city. The church also alleges the city's insistence on a conditional use permit has imposed a substantial burden on its religious exercise.

Two years into this litigation, the city argued (for the first time) that the church's legal claims were not ripe because the church never applied for variances from applicable parking regulations. The district court ordered the church to apply for

such variances, and the city ultimately awarded them to the church, along with a conditional use permit. Afterward, the district court granted the city summary judgment, ruling the church's claims were not ripe when filed and rendered moot.

We reverse. The district court focused on the church not applying for parking variances before the lawsuit. But that issue is related only tangentially to the church's claims, which concern zoning use classifications, not parking. The ripeness of the church's claims does not hinge on pursuit of parking variances that will not resolve them. Nor can a conditional use permit from the city moot the church's claim that such a permit is not needed. The key question in this case is whether operating a church on the Property is a permitted or conditional use. The district court did not answer that question, but it is the necessary starting point for resolving the church's legal claims.

## I. Background

### A. The City's Zoning Regulations

The city employs a "cumulative" zoning scheme, designating 11 categories of "use districts." CITY OF MARKHAM, ILL., ZONING CODE § 156.015. A "use" refers to "[t]he purpose for which land or premises or a building or structure thereon is designed, arranged, or intended, or for which it is occupied or maintained, let or leased." Zoning Code § 156.003. The various use districts are ranked from the highest, most restrictive uses (R-1 One-Family Residential Districts) to the lowest, least restrictive uses (L-3 Motor Freight Terminal Districts). *Compare* Zoning Code §§ 156.050–.056, *with* §§ 156.210–.224. The scheme is "cumulative" because any use in a higher use district is permitted in a lower use district (for example, all

uses permitted in the residential districts are permitted in the commercial districts). Zoning Code § 156.146(A); *see also* 1 PATRICIA E. SALKIN, AMERICAN LAW OF ZONING § 9:14 (5th ed. Supp. 2018).

The zoning code also distinguishes between "permitted" uses (which do not require city approval) and "conditional" uses (which do). *Compare* Zoning Code § 156.051 ("The following uses are permitted …"), *with* § 156.052 ("The following [uses] may also be permitted upon approval of their location and development by the Plan Commission …"); *see also* SALKIN, *supra*, at § 9:20. If a property owner's intended use is not permitted as of right, the owner must apply to the city for a conditional (or "special") use permit. Zoning Code § 156.317(A).[1] The city's planning commission evaluates the application and may recommend approval only if "it finds that the issuance of such special use permit is in the public interest and not solely for the interest of the applicant." Zoning Code § 156.319(B). Final authority on conditional use permits rests with the city council, which may grant one only if "[t]he proposed use at the particular location requested is either necessary or desirable in order to provide a service or a facility which is in the interest of public need and convenience and which will contribute to the general welfare of the community." Zoning Code § 156.320(A).

The Property is located in an R-3 One-Family Residential District, which permits single-family dwellings and "[a]ll uses permitted in the R-2 district." Zoning Code § 156.081.

---

[1] The zoning code uses the terms "conditional use" and "special use" interchangeably. *E.g.*, Zoning Code §§ 156.315–.327. We employ the phrase "conditional use."

Keeping with the nesting doll framework of cumulative zoning, "[a]ll uses permitted in the R-1 district" are permitted in the R-2 districts, so all uses permitted in the R-1 districts are also permitted in the R-3 districts. Zoning Code § 156.066(B).

The zoning code does not expressly provide for any conditional uses in the R-2 or R-3 districts. But it does list five conditional uses in the R-1 districts: (1) Schools, (2) "Churches and buildings usually associated with similar activities," (3) Public parks, (4) Governmental and utility buildings, and (5) Hospitals. Zoning Code § 156.052. That is the only provision in the zoning code that mentions "churches" as a conditional use, and no provision expressly identifies them as a permitted use. Other places of public assembly, meanwhile, are permitted uses as of right in other districts: "theaters" are permitted in C-1 Neighborhood Shopping Districts, Zoning Code § 156.146(D)(2), and "auditoriums" are permitted in C-2 Community Shopping Districts. Zoning Code § 156.161(B)(2).

The zoning code's use classifications are distinct from its parking regulations. In "all districts," whenever a building is to be erected or enlarged, the owner must present a plan for off-street parking to be approved by the city's planning commission, regardless of whether the property owner's use is permitted or conditional. Zoning Code §§ 156.246–.247. The required number of off-street parking spaces, however, varies depending on property use. Zoning Code § 156.252.

### B. Renovation of the Property

Reginald McCracken, the church's pastor, purchased the Property as a personal residence in 1985. In 2003, the congregation began meeting regularly at the Property, with ten to

twenty people attending Sunday morning services. Today, average attendance for a worship service is about thirty people. In 2012, due to growing attendance and an increase in religious activities, the church began a project to renovate the garage into a chapel. The project involved installing a new roof, new windows, and pews, and cost approximately $40,000.[2] Just months after the project's completion, the city filed suit against the church in Illinois state court, seeking to enjoin its operation on the Property without a conditional use permit. The city did not issue any citations or formal notices to the church beforehand.

## C. 2013 Application for a Conditional Use Permit

When the state court denied the church's motion to dismiss the city's lawsuit in March 2013, the church requested a continuance to apply for a conditional use permit from the city. The state court granted the continuance, simultaneously entering an order restricting off-street parking around the Property.[3] The church filed its application, but it did not request any variances from the city's parking regulations.

After considering reports from a building inspector and an engineering consultant, the city's planning commission voted to recommend that the city council deny the church's conditional use application. A week later, the city council concurred and denied the application.

---

[2] The parties' briefs address numerous disputes about previous permit applications and whether the church obtained the necessary approvals before starting its construction project in 2012. Because the merits of this appeal do not turn on such issues, we do not delve into them.

[3] The city's lawsuit in state court has since been stayed indefinitely, pending resolution of the church's claims in this case.

### D. *This Lawsuit*

Following the city's denial of the conditional use permit, the church filed this lawsuit in Illinois state court. When the church amended its complaint to add an RLUIPA claim, the city removed the case to federal court. The city unsuccessfully moved to dismiss the church's claims, in both state and federal court, but at the pleading stage never challenged their ripeness.

The church's operative complaint contains four distinct claims: (1) an RLUIPA "equal terms" claim under 42 U.S.C. § 2000cc(b)(1); (2) an RLUIPA "unreasonable limitations" claim under 42 U.S.C. § 2000cc(b)(3)(B); (3) an RLUIPA "substantial burden" claim under 42 U.S.C. § 2000cc(a)(1); and (4) a claim under Illinois's Religious Freedom Restoration Act, 775 ILL. COMP. STAT. 35/25(d).[4]

As to how religious facilities should be classified under the zoning code, the church sees only two possible interpretations, either of which renders the city liable. The church's preferred interpretation is that a church is a permitted use of the Property, such that the city's insistence on a conditional use permit was incorrect and constituted a substantial burden on the church's religious exercise. According to the church, the only other possible interpretation is that a church is a conditional use in the R-3 districts, which would mean the zoning code provides no districts in which religious facilities

---

[4] Because the last two claims are "materially identical," *World Outreach Conference Ctr. v. City of Chicago*, 591 F.3d 531, 533 (7th Cir. 2009), we refer to them together as the "substantial burden claims."

are permitted as of right, thereby violating RLUIPA's equal terms and unreasonable limitations provisions.

The city reads the zoning code a third way: churches are a conditional use in the R-3 districts, but are permitted as of right in the city's commercial and industrial districts (although those districts do not expressly list "churches" as a permitted use), so there cannot possibly be an equal terms or unreasonable limitations problem.

After discovery closed, the church announced it intended to move for summary judgment on the permitted versus conditional use question. The district court asked how the city hoped to resolve the parties' dispute, and the city's attorney asserted the church's claims were not ripe because the church had never submitted a parking plan for the city to consider. Subsequently, the district court struck the parties' cross motions for summary judgment and ordered the church to apply for a parking variance. The district court specified, however, that it was "not opining on whether Plaintiff needs, or the City should approve, any particular variations or conditional use permits Plaintiff may seek."

The church complied with the district court's order by filing an "Application for Variances" with the city, in which it expressly stated it was not seeking zoning approval, based on its contention that a church is a permitted use not requiring conditional use approval. The church did request, however, "whatever variances the City believes are necessary to allow the Church to continue with its existing off-street parking." The church also acknowledged it could not "afford to bring its existing parking into compliance with the strict letter of the City's Ordinance," such that "variances for parking are

required in order to accommodate and allow the congregation to continue its religious assembly on the property."

The city council responded by passing two ordinances, which purported to grant the church parking variances and a conditional use permit. But each required the church's signature accepting all terms and conditions imposed. The church never executed either ordinance.

When the parties returned to the district court following this process, the district court granted the city summary judgment on all counts. The court held that the church's claims were not ripe when filed because the church had not applied for parking variances, and the church's claims for future damages became moot as a result of the conditional use permit. The district court ruled that any claim for past damages was "speculative" and failed because the claims had not ripened until the church submitted its variance application. The church appealed.

## II. Discussion

We review a grant of summary judgment de novo. *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). De novo review also applies to a district court's ripeness and mootness determinations, although we accept its underlying factual findings absent clear error. *Freedom From Religion Found., Inc. v. Concord Cmty. Sch.*, 885 F.3d 1038, 1045 (7th Cir. 2018) (mootness); *Metropolitan Milwaukee Ass'n of Commerce v. Milwaukee Cty.*, 325 F.3d 879, 881 (7th Cir. 2003) (ripeness).

The church's operative complaint alleges the zoning code treats religious uses of property on unequal terms with secular uses, unreasonably limits where religious organizations

may locate, and substantially burdens its religious exercise.[5] Importantly, the church's equal terms and unreasonable limitations claims hinge on the city's interpretation of its zoning code rendering churches a conditional use in the R-3 districts, rather than a permitted use as of right. If, however, the church's interpretation that it is a permitted use is correct, then its equal terms and unreasonable limitations claims fall away, leaving only its substantial burden claims.

Despite the significance of deciding whether a church is a permitted or conditional use of the Property, the district court did not resolve that issue:

> I don't care if they give you a permitted use recognition. If you submit a [parking] plan and they approve it and they let you continue, the case is over. You get to continue. They're not stopping your religious freedom. I mean, so whether you get a permitted use finding from them doesn't really make any difference to me.

This approach—blurring the distinction between zoning use and parking regulations—led to problems in the summary judgment decision before us. The variances might relieve the church from certain parking regulations, but they say nothing about whether the church's use of the Property is permissible. And a conditional use permit does not moot the church's claim that it does not need one and is entitled to be treated as a permitted use as of right. Accordingly, the district court's summary judgment decision must be reversed.

---

[5] The church pleads its RLUIPA equal terms and unreasonable limitations claims as facial attacks on the city's zoning code. Its substantial burden claims appear to be a mix of as applied and facial challenges.

### *A. Ripeness*

The district court granted summary judgment to the city based primarily on the court's conclusion that the church's claims were not ripe. The ripeness doctrine arises out of the Constitution's case-or-controversy requirement, as claims premised on uncertain or contingent events present justiciability problems. *Wisconsin Right of Life State Political Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011); *see also* 13B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3532 (3d ed. Supp. 2018). The doctrine's underlying objective is to avoid premature adjudication and judicial entanglement in abstract disagreements. *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200–01 (1983). Because ripeness is "peculiarly a question of timing," a court determines ripeness as of the date of its decision, not the date the lawsuit was filed. *Buckley v. Valeo*, 424 U.S. 1, 114–118 (1976) (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974)).[6]

As noted above, the district court appears to have concluded the church's claims were not ripe because the church failed to request a variance from the city's off-street parking regulations before filing suit. In the district court's view, "instead of formally seeking a variance from the City, the Church sought to bypass the administrative process and, in essence, asked for a court-ordered variance." 309 F. Supp. 3d 545, 554 (N.D. Ill. 2018). But the district court's focus on

---

[6] To the extent the district court determined ripeness as of the date the church filed its complaint, rather than the date of that court's decision, that was erroneous. *Blanchette v. Connecticut Gen. Ins. Corp.*, 419 U.S. 102, 140 (1974); *cf.* 13B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3532.7 (3d ed. Supp. 2018).

parking variances misapprehends that the church's legal claims are directed at the zoning code's use classifications, not its parking requirements.

For example, the church's equal terms claim is premised on the city's interpretation of the zoning code rendering a church a conditional use in the R-3 districts. According to the church, the city's reading would mean there is no district in which a church would be permitted as of right. The church alleges this violates RLUIPA[7] because analogous secular uses, such as theaters, are permitted as of right in districts within the city, but churches are always a conditional use subject to city approval.[8] Obtaining a parking variance would not rectify this alleged inequity: a theater would still be permitted as of right, while a church would remain a conditional use that could be denied a permit or otherwise lose its permission to operate. The variance might alleviate burdens imposed by the city's parking regulations, but it does not address zoning use classifications, which are the subject of this lawsuit.

Nor would a parking variance solve the church's unreasonable limitations claim. The church contends that by treating churches as a conditional use everywhere, and providing no district where they can locate as of right, the city has implemented a land use regulation that "unreasonably

---

[7] The relevant subsection provides: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. 2000cc(b)(1).

[8] In comparing zoning treatment, a court looks to whether the religious and secular organizations are treated the same with respect to accepted, objective regulatory criteria. *River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367, 371 (7th Cir. 2010).

limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3)(B).[9] Again, a parking variance would not address the church's central contention about the legality of its use of the Property.

Alternatively, the district court's opinion could be construed to hold that a plaintiff must apply for a conditional use permit (as opposed to a parking variance) before bringing an RLUIPA claim. But that framework does not work either. It would address the legality of the church's use, but not the church's primary contention that operating a church is a permitted use. Nevertheless, the city directs us to the Supreme Court's ripeness test for Takings Clause claims, which requires a plaintiff to obtain a "final decision" from a local government about how it may use its property before ripening a claim. *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). Some circuit courts have extended *Williamson County* to RLUIPA claims involving land use issues. *See Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 976 (9th Cir. 2011); *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537–38 (6th Cir. 2010); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 352 (2d Cir. 2005).

Although we have not addressed this specific question, we have declined to apply *Williamson County*'s final decision test to other non-Takings Clause challenges to local zoning codes. *Triple G Landfills v. Bd. of Comm'rs of Fountain Cty.*, 977 F.3d

---

[9] Whether a limitation is reasonable or not must be determined "in light of all the facts, including the actual availability of land and the economics of religious organizations." *Vision Church*, 468 F.3d at 990 (quoting 146 Cong. Rec. E1563 (Sept. 22, 2000) (statement of Rep. Canady)).

287, 289 (7th Cir. 1992) (final decision test does not apply to facial attacks upon the validity of a zoning ordinance); *see also Forseth v. Vill. of Sussex*, 199 F.3d 363, 370–71 (7th Cir. 2000) (applying *Williamson County* to substantive Due Process claim, but not Equal Protection claim). Because the Supreme Court based its holding in *Williamson County* on "the very nature of the inquiry required by the Just Compensation Clause," 473 U.S. at 190, extending it to different claims is suspect. *See Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach*, 727 F.3d 1349, 1357 (11th Cir. 2013) (declining to apply *Williamson County* to RLUIPA discrimination claim); *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 92 (1st Cir. 2013) (same); *cf. Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 287 n.7 (5th Cir. 2012) (noting the issue but declining to take a position on whether *Williamson County* applies to RLUIPA and First Amendment claims).[10]

But we need not resolve that question, because the church's claims satisfy *Williamson County*'s final decision test, even if it does apply. The record demonstrates the city has made a final decision regarding the church's zoning use classification. The city went so far as to file the state lawsuit seeking an injunction to require the church to either cease

---

[10] The Supreme Court will consider "[w]hether the Court should reconsider the portion of *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 194–96 (1985), requiring property owners to exhaust state court remedies to ripen federal takings claims" in *Knick v. Twp. of Scott*, 862 F.3d 310 (3d Cir. 2017), *cert. granted*, 138 S. Ct. 1262 (2018) (No. 17-647) (argued Jan. 16, 2019).

operations or obtain a conditional use permit.[11] Unlike in *Miles Christi*, where the municipality remained undecided on interpretation of relevant provisions of its zoning regulations, 629 F.3d at 538, there is no ambiguity about the city's interpretation on the permitted versus conditional use question. Since 2012, the city has always taken the position that churches are a conditional use in the R-3 districts, and nothing in the record or the parties' arguments suggests the city might reconsider that interpretation.

Moreover, although the church did not formally request a parking variance before filing this lawsuit, the church did apply for a conditional use permit, which the city denied. Contrast that to the plaintiffs in *Murphy*, who did not challenge the municipality's interpretation of its zoning regulations or apply for any administrative relief whatsoever. 402 F.3d at 345 (noting the plaintiffs filed suit two days after receiving a letter from local zoning authorities). The church could have petitioned the city to reconsider its decision, but pursuit of such relief is not required to make the city's decision "final." *Williamson Cty.*, 473 F.3d at 192–93 ("[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury … ."). Six years into this zoning saga, the city's actions establish that it has

---

[11] It seems the city wishes to pursue its state court enforcement action before demanding the church apply for parking variances, while simultaneously avoiding the church's RLUIPA claims on the same basis. *Cf. World Outreach*, 591 F.3d at 537 ("[B]y bringing suit against World Outreach, the City chose the forum in which it wanted the organization's rights adjudicated; it can hardly be heard to criticize the organization for accepting that choice.").

finally rejected the church's permitted use interpretation. Additional proceedings before the local zoning authorities will not alter this case's facts.

In summary, parking variances do not address the central controversy between the parties about whether the zoning code treats religious uses on unequal terms with secular uses, or places unreasonable limitations on religious exercise. And the city made a final decision to reject the church's contention that it is a permitted use. The church's claims are ripe, regardless of whether *Williamson County* applies.

### B. Mootness

The district court also ruled that the parking variances and conditional use permit mooted the church's legal claims. A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). The party asserting mootness bears a "heavy burden of proof" in demonstrating it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Freedom From Religion*, 885 F.3d at 1051. The district court's mootness determination suffers from at least two problems.

First, as described above, neither a parking variance nor a conditional use permit resolves the parties' dispute about whether a church is a permitted or conditional use in the R-3 districts. The district court's mootness decision is analogous to the assertion that a defendant can moot a plaintiff's claim simply by offering to pay damages, which the Supreme Court rejected in *Campbell-Ewald*. 136 S. Ct. at 670. The church's

complaint sought a declaration that the city had violated the law, an injunction against the city enforcing the zoning code to prevent the church from using the Property, and an award of money damages. None of that has happened yet, so the case is not moot. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 786 (7th Cir. 2015).[12]

Second, no variance or conditional use permit ever went into effect here. The city ordinance purporting to award the church parking variances states, "This Ordinance shall be signed by the Church to signify its agreement to the terms hereof, and this Ordinance is conditional upon the Church executing the Ordinance." Markham, Ill., Ordinance No. 17-0-2168 (Mar. 1, 2017). Likewise, the ordinance purporting to grant the church a conditional use permit also required the church's signature. Markham, Ill., Ordinance No. 17-0-2169 (Mar. 1, 2017). But the church never executed either ordinance. By their own terms, the ordinances are ineffective. Thus, even if a variance or conditional use permit could moot the church's claims, neither is present here.

### C. *Damages*

The district court also characterized the church's damages claims as "speculative" and lacking evidentiary support. The summary judgment record contradicts that finding. The church presented a sworn declaration from its leader, Pastor

---

[12] The availability of a conditional use permit remains relevant in this case, however. For example, such relief from the city impacts the church's damages claim (which the church acknowledged in the district court), and a conditional use permit may be the sort of reasonable accommodation to which the church is entitled on its liability case. We leave those issues for the district court's consideration on remand.

McCracken, describing the injuries the city allegedly inflicted upon the church. He detailed how the city's lawsuit to enjoin the church's operation had distracted the church's leadership from its religious objectives and placed stress on the congregation. Certainly, the damages for such injuries are not as easily quantifiable as a business's lost profits or a tort victim's medical bills. Yet, they are within the ambit of compensatory damages, and the district court erred in dismissing them out of hand. *See Memphis Cmty. School Dist. v. Stachura*, 477 U.S. 299, 307 (1986) ("[C]ompensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering.") (internal quotation and ellipsis omitted).

Even if the church lacked sufficient evidence to prove its damages to a specific monetary sum, nominal damages remain an appropriate means of vindicating rights whose deprivation is difficult to quantify. *Guzman v. City of Chicago*, 689 F.3d 740, 748 (7th Cir. 2012); *cf. Carey v. Piphus*, 435 U.S. 247, 266 (1978) (recognizing availability of nominal damages for deprivations of civil rights that do not inflict financial injury). The church's alleged injuries are more than "speculative," and its damages case should have survived summary judgment.

### D.  Standing Arguments

Finally, the city attempts to defend the district court's decision on an independent ground—the church's alleged lack of standing to pursue its equal terms and unreasonable

limitations claims.[13] The city contends the church cannot complain that other places of public assembly are treated as permitted uses in the C-1 and C-2 districts because the church does not own property in those districts and has never attempted to move to them.

The standing doctrine requires a plaintiff to demonstrate it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The church meets each of those elements. The city's state court lawsuit to enjoin the church's operation is sufficient to demonstrate an injury in fact. *See Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cty.*, 450 F.3d 1295, 1304 (11th Cir. 2006) (municipal zoning restriction on use of property constituted an "actual injury"). That injury is directly traceable to the city's interpretation of its zoning code and could be redressed by a favorable judicial determination.

The city points to *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004), to support its argument that an RLUIPA plaintiff lacks "standing" to challenge unequal terms in a zoning code unless it is presently located in, or has concrete plans to move to, the zoning district where the comparator secular organization is allegedly provided more favorable treatment. *Id*. at 1224 n.9. Similar to this case, in *Midrash* a municipality attempted to enjoin the operation of

---

[13] Although the city did not challenge the church's standing to raise its unreasonable limitations claim in the district court, challenges to a plaintiff's Article III standing cannot be waived or forfeited. *Freedom From Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008).

two synagogues, which responded by alleging the municipality's zoning code violated RLUIPA. *Id.* at 1220–22. The Eleventh Circuit determined that the synagogues had standing to pursue their claims of a legal right to remain in their current locations, although they lacked standing to pursue other discrimination claims regarding the zoning treatment of religious facilities in districts where they were not located. *Id.* at 1224 & n.9.

Like the synagogues in *Midrash*, the church's legal claims are premised on its request to continue to worship at its present site. The church is not an outsider with no stake in the city's zoning scheme. Although some of the church's legal theories allege the zoning code nowhere permits churches as a matter of right, at bottom the church challenges the city's treatment of churches as conditional uses in the R-3 districts—such as where the Property is located. In other words, the church challenges its zoning use categorization at the Property, even as the church argues the zoning code as a whole discriminates against religious uses.

Such an argument is cognizable, as courts assess the entirety of a zoning scheme when evaluating a property owner's RLUIPA claim. *See Eagle Cove Camp & Conf. Ctr. v. Town of Woodboro*, 734 F.3d 673, 680 (7th Cir. 2013) (RLUIPA not violated because plaintiff could locate Bible camp in other zoning districts within the municipality); *Vision Church*, 468 F.3d at 989 (RLUIPA "exclusion" claim triggered only where municipality applies "complete and total exclusion of activity or expression protected by the First Amendment").

In short, the church has sustained a concrete injury resulting from the city's interpretation of which zoning uses are permitted in the R-3 districts, and that injury is sufficient to

give the church standing for Article III purposes. The church need not move to another zoning district to acquire standing to pursue its claim that it is entitled to stay put.

### III. Conclusion

For the foregoing reasons, we REVERSE the district court's grant of summary judgment in favor of the city and REMAND for further proceedings. We encourage the district court to begin by addressing whether operating a church on the Property is a permitted or conditional use under the zoning code.

Our decision expresses no opinion on the substantive merits of any of the church's legal claims or on the proper interpretation of the city's zoning code. The district court did not reach those issues, and we do not decide them for the first time on appeal. Circuit Rule 36 shall apply on remand.